(28 Misc. Rep. 97.)

HEATON et al. v. HULL et al.

(Supreme Court, Special Term, St. Lawrence County. June 23, 1899.)

1. FRATERNAL COLLEGE SOCIETIES—EXPULSION OF SUBORDINATE CHAPTERS—INJUNCTION.
    Individual members of a fraternal college society may enjoin the unauthorized withdrawal of the charter of the chapter to which they belong, though membership would remain to them in spite of the withdrawal.

2. SAME.
    The grand council of a fraternal college society, desiring to expel a subordinate chapter, circulated unfounded charges against it among other chapters, without notice. The hearing was held 1,500 miles from the location of the chapter, in vacation, when the chapter could take no official action, and it was represented by volunteers merely. The council refused to divulge the names of members of the other chapters, and consequently the chapter affected could not present its side to the persons who were to cast the votes of such chapters. The council refused to pass on the protest of the volunteers, and adjudged expulsion. It was presided over by the accuser, and composed partly of prejudiced judges. The decision it gave might be construed as covering the unfounded charges. *Held*, that the courts would enjoin consummation of the expulsion.

3. SAME
    The fact that only one of the council could be reached by the courts of the state would not preclude such relief.

Action by Lucia E. Heaton and others against Mary Josephine Hull, impleaded with others. Judgment for plaintiffs.

Ledyard P. Hale, for plaintiffs.
Elmer A. Denton, for defendant Hull.

RUSSELL, J. The plaintiffs seek to enjoin the defendants, only one of whom is brought within the jurisdiction of this court, from consummating the wrongful withdrawal of Beta Beta Chapter of the Kappa Kappa Fraternity, and from the publication in the official organ of the fraternity, the Key, managed by the defendant Hull, in this state, the misleading statement of such withdrawal, alleged to have never been effectively accomplished. These plaintiffs are resident and nonresident members of the local chapter at a college town in New York of this collegiate fraternity, which is composed of chapters in various states of the Union, and governed by the rules established by its national convention under a written constitution framed by the convention. In 1881 a Browning society existed at this college town, which was that year, at the request of the Kappa Fraternity, transformed into the local Beta

Beta Chapter of the fraternity. As the years passed by, many young women became members of the chapter, and, upon graduation from college, passed into alumnæ membership; most of them leaving for other parts of the country, but some remaining residents within the chapter jurisdiction. The current of association with other chapters of the fraternity seems to have run smoothly for 17 years, until April, 1898, when the grand president of the fraternity made a short visit to the chapter. No intimation of hostile action or examination of the merits of the chapter was then had, but at once after the grand president had returned to her home she instituted proceedings through which, without notice to the Beta Beta Chapter or its members, in May, 1898, the grand council of the fraternity, an executive committee of the order, voted to withdraw the charter of the chapter, upon charges against the standing of the college, and the lack of culture and refinement among the women of the college and the town. This vote was taken by correspondence, and evidently upon information furnished by the grand president. Injunction proceedings having been taken, by members of the chapter in the courts at Boston, where the grand president was reached by process, and an injunction served, without repudiation of former charges, a notice signed by the grand president was mailed to the chapter, that the question of the withdrawal of the chapter would be brought before the grand council at Lincoln, Neb., on the 29th of August, 1898, upon allegations of lack of proper material for the maintenance of the chapter and the failure to comply with the rules of the fraternity; the latter charge being aimed at the handing of the printed constitution by one member to counsel, so that he could advise upon the legal questions for the protection of the members. This notice was received by the secretary of the chapter on the 10th of August, 1898, at her home, over 200 miles from the location of the chapter, during vacation of the college, while the members were scattered in various states, so that no official action could be taken by the chapter. Volunteers, however, appeared for the chapter, and made a vigorous protest against the proceeding; but the grand council went on, without passing upon the protest, so far as they could do so, to withdraw the charter on the ground of lack of proper material. They also obtained the assent of two-thirds of the chapters to such action by information which the chapter had no practical means to meet, as the list of members of the fraternity was denied to the members of the chapter. The grand council was composed of the five defendants, three of whom had already decided against the chapter. The original charter gave full rights to the chapter so long as it conformed to the rules and usages of the fraternity. No proof was offered before the grand council or the chapter that any rule was broken or usage violated. The defendant Hull was alone served with process, and alone appears to defend. The fraternity has valuable property interests, and the Beta Beta Chapter had paid its dues for the current year.

Upon the trial in this action no proof was offered of any breach by the chapter, except the exhibition of the constitution to counsel by a member, and that ground for action is now expressly disclaimed

by defendant's counsel. Nor was it claimed upon the trial that the charges on which the original prosecution of the chapter was founded were ever sustained, nor was proof here offered of the truthfulness of those accusations. On the contrary, so far as the masculine judgment of feminine culture and refinement, limited as it is in the finer lines, can judge of such delicate subjects from the appearance of the ladies who were witnesses upon the trial, the members of other chapters would need to be of a rare order, to justify holding themselves so superior in acquired and natural qualities as to render uncongenial to them the active and alumnæ members of Beta Beta Chapter.

But it is argued by defendant's counsel that the injury is so slight, the sphere of action of this society so removed from material considerations which alone can set in action the movement of the courts for the prevention and redress of injuries, and the implied powers of the grand council, an inferior body to the national convention, with the assent of two-thirds of the chapters, so great, that no court can inquire or intervene. The grand council is created by the national convention, and is evidently designed for executive functions to be performed during the interregnum between conventions. It has a negative vote against the withdrawal of chapters, whether such withdrawal is applied for by a chapter or is to be forced. No affirmative power to act in such a matter is given the grand council, nor has it been assumed, except in one other instance, where the chapter surrendered its papers without protest. In all other withdrawals the national convention has exercised the judicial power to withdraw charters. No causes for expulsion are provided for by the constitution, and the national convention, prior to the prosecution against the Beta Beta Chapter, had initiated proceedings for rules to regulate and justify proper action against chapters, which rules had not been formulated when the complaint was made against the Beta Beta Chapter. The presumption therefore arises, if we may venture to apply inferences of legal construction to the proceedings of this fraternity, that its recognized rules have not been observed in obliterating this chapter and depriving its active and alumnæ members of their share in the valuable property of the fraternity, and the benefits of the dues paid for the current year, even were no other considerations involved.

But deeper injuries appear. The virus of the original accusation permeated the action from May to August, from the alpha to the omega of the offensive procedure. That procedure was initiated, persisted in, and concluded, with only that shifting of form of action which some prudence dictated. It will not answer to say that a prosecution which was instituted upon the basis of unfitness for refined feminine association, and culminated in a judgment of perpetual exclusion, is purified and made the proper foundation for such a judgment because, while it did not in any way pass against the truth of the more precise charge of want of culture and refinement, it ostensibly placed such judgment on the general ground which might cover any unfitness,—"because of lack of proper material for the maintenance of the chapter." The material referred

to is animate, and not inanimate. Translated in the light of the charges, the finding means the want of proper young women to keep the chapter fit for the association of other members, by reason of the lack of culture and refinement. Those charges affected all the members of the chapter, resident or nonresident, active or alumnæ. They tainted the membership of all. No claim was made of any deterioration of membership in determining the propriety of retaining the chapter, and all the members were classified together. Their title to membership came from a disgraced chapter, and the benefits of association with the fraternity were destroyed by the judgment condemning the source of their membership. The resident members could no longer enjoy local participation in the chapter meetings, and their outside privileges, infrequent in use, were of little value to compensate for the deprivation and injury. They could not affiliate with other members on equal standing. So their membership was practically destroyed, and a defense against remedial action that the barren membership remains to plaintiffs is hardly worth the seriousness with which it is urged.

In the absence of defined regulations as to the causes for expulsion, the ordinary principles of justice govern. Offenses against the tenets of the order justify action. Caprice or malice do not. There is no evidence of any governmental rule which destroys the presumptions as to the tenets of the fraternity. We may safely assume, without fear of protest from any defendants, that those tenets aim to promote the tender feminine graces and refinements which harmonize so thoroughly with just and even altruistic principles. To wrong an outsider, and, a fortiori, a member, is conclusively against the basic ethics of a fraternity order. Hence the wrong here done is undoubtedly contrary to the governing principles of the fraternity, and so wrongs, not only the plaintiffs, but the fraternity itself. I should therefore hold that, even if the outward forms of the society had been observed in degrading this chapter and its members, still such a blow was struck to the vital principles of the order and the rights of its members that no formalities could justify such destructive action, and any one aggrieved could appeal to the only resource left,—the benign, yet powerful, protection of the law. And it is a mistake to rest upon the assertion that law recognizes only material property injuries, and has no care for wounded emotions or character. Even in the cruder days of the common law, it gave to lost service of a daughter or wife pence, where it gave to the hurt sensibilities of the father or husband hundreds of pounds. It atoned for injury to character and wounded feeling by exemplary damages. And courts of equity, such as the one now appealed to, grasp jurisdiction of other than property injuries, where equitable considerations require action to prevent hurt to standing or character which damages may not compensate.

In the present case the circulation to chapters or members, for their action, for expulsion of Beta Beta Chapter, of unfounded charges against the membership of that chapter, without notice to the persons affected; the continuance, with the added statement of the grand president, promoter of the charges, that the chapter had pub-

lished the constitution, against the vows of the initiated members, now abandoned; refusal to give the sheets containing the names of members of the various chapters, so that the members of the chapter affected could not present their side to the persons who would cast the votes of the chapters; giving that notice of contemplated final action at a place 1,500 miles away, at vacation time, when no official chapter action could be taken in defense, and only volunteers could appear to protest; refusing to pass upon such protest, and adjudging expulsion, by a tribunal presided over by the accuser, and composed partly of already prejudiced judges, without withdrawal of the charges against character; and formulating a decision which could be construed as covering those charges,—give to the courts the right to say that the rules of the society have been violated, and personal rights injured, and thus interfere to enjoin further action to consummate the wrong.

Nor will it be an answer to say that, granting an injury was done these plaintiffs, no relief whatever can be given them, because the defendants acted officially as a unit, and only one of them has been reached by the courts of this state. This action is brought to prevent a wrong being consummated, and, if official power has been exceeded or usurped, may go against one or all. The grand president, or any other grand councilor, cannot defeat justice by the exercise of a prudent discretion in not appearing within the jurisdiction, or defending her action so vigorously assailed. The defendant served can intensify the injury, and practically destroy all the chapter rights, by scattering broadcast among all the fraternity members in the official Key the tidings of expulsion, unfounded if that expulsion is illegal.

I understand, from the brief of counsel for the defendant, submitted after the trial, that he concedes the law to be that notice must be served upon the member of a society before action in the nature of expulsion, the charges stated in the notice, and fair opportunity afforded him for a hearing in defense; that the tribunal which has the power to expel must be free from personal hostility, bias, or fraud; and that, where there is an absence of constitutional rules or by-laws regulating the causes for expulsion and the manner in which proceedings should be taken, those proceedings must be conducted in accordance with the principles of natural justice. In the view of the facts as seen by this court, it is therefore unnecessary to cite authorities in justification of the conclusion reached that a legal remedy here exists. However, I understand this concession to be within the principle of the decisions, some of which may be briefly adverted to. The general term of the First department held, in the case of Loubat v. Leroy, 40 Hun, 546, that a resolution of expulsion of a member could be declared null and void for want of proper notice and a fair hearing. In the case of People v. Musical Mutual Protective Union, 47 Hun. 273, the commission of appeals decided that an appearance at the time of hearing, and a denial of the right of the directors to proceed, and a refusal to answer the charge, did not deprive the member of his right to previous service of the charges, and the power to apply for a reinstatement

did not prevent mandamus proceedings in the courts. See, also, People v. Musical Mutual Protective Union, 118 N. Y. 101, 23 N. E. 129. In Miller v. Builders' League, 29 App. Div. 630, 53 N. Y. Supp. 1016, the decision of one of the justices of this district was affirmed upon the opinion of that justice. It was there held that the order had no right to expel the member for resorting to legal privileges, and that the effort to do so was unauthorized and arbitrary. In the late case of People v. New York Produce Exch., 149 N. Y. 401, 44 N. E. 84, it was held that the causes of suspension and expulsion must be stated with reasonable certainty in the notice to the member, and the cause for the action must be within the scope of the by-laws. These cases are mainly as to membership in corporations, but no distinction is recognized between corporations and voluntary unincorporated associations. Lewis v. Wilson, 121 N. Y. 284, 24 N. E. 474. The case here is substantially the same, so far as the greater benefits of membership are concerned, as though the act of expulsion were directed against the plaintiffs individually.

For the reasons which have been stated in this opinion, the chief value of membership and association with members of other chapters lies in the initiation by a chapter of good standing, and the continuance of privileges as members of the local chapter. When that value has been destroyed by an expulsion of the chapter on the assumption that it is not, and never has been, worthy of maintenance, from the character of its material, the blow comes home directly to all of those who have become members under the authority of that chapter, and so their individual rights have been invaded.

Let a judgment go for the relief demanded, in the nature of an injunction.