(57 Misc. Rep. 96.)

### THOMAS RUSSELL & SONS v. STAMPERS' & GOLD LEAF LOCAL UNION NO. 22 et al.

(Supreme Court, Special Term, New York County.   November 30, 1907.)

1. TRADE UNIONS—ACTIONS—SERVICE ON OFFICERS.

In a suit to restrain intimidation, etc., by members of a trade union during a strike, the unions, being voluntary associations, were properly made parties by service on their officers under Code Civ. Proc. § 1919, providing that an action or special proceeding may be maintained against the president or treasurer of an unincorporated association on any cause of action against all the associates, and a recovery had against them jointly or severally.

2. INJUNCTION—SCOPE—PERSONS RESTRAINED.

A strike injunction, issued against the officers and members of a labor union, was binding on each and every member of the union, though only the officers were served.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, § 425.]

3. SAME—COMPLAINT—INJURY TO PERSON AND PROPERTY.

A complaint for a strike injunction against trade unions alleged that defendants had conspired by abuse, intimidations, threats, and violence to coerce and intimidate plaintiff's employés and to induce them to leave and force plaintiff to accede to the union's demands; that, with intent to injure and destroy plaintiff's business and property, defendant unions were committing and continued to commit acts of intimidation, abuse, and violence against plaintiff and its employés, followed by a recital of alleged acts of violations committed at the instigation of defendant unions and their officers and members.   *Held*, that the complaint alleged a cause of action for threatened injury to person and property.

4. REFERENCE—FINDINGS—CONCLUSION.

A referee's finding, in a suit for injunction to restrain illegal acts of strikers, that certain of the acts were committed in the interest and for the benefit of defendant labor unions, was a conclusion of law, rather than a finding of fact.

5. CONSPIRACY—DEFINITION—PROOF.

A conspiracy, being a combination between two or more persons with the unity of design for a common purpose to do an unlawful act or a law-

ful act by unlawful means, cannot be sustained by evidence which would merely establish separate causes of action against several defendants.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Conspiracy, § 26.]

6. INJUNCTION—TRADE UNIONS—STRIKES—VIOLENCE—CONSPIRACY—EVIDENCE.
In a suit to restrain certain labor unions and their members from committing acts of intimidation and violence during a strike, evidence *held* insufficient to warrant a finding that acts of violence already committed were for the benefit of the union, or that they were the result of a conspiracy to injure plaintiff or his business.

7. TRADE UNIONS—NATURE OF ASSOCIATION—RIGHTS.
A labor union is an entity recognized by law, endowed with the same right as an individual to threaten to do that which it may lawfully do.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade Unions, § 1.]

8. SAME—UNLAWFUL ACTS OF MEMBERS.
Unlawful acts of violence committed by one or more members of a trade union during a strike are not ipso facto binding on the union, in the absence of proof that the union as such, promoted or ratified the acts.

9. CONSPIRACY—EVIDENCE—SUFFICIENCY.
Though ratification by a trade union of acts of violence committed by its members during a strike may be proved by circumstantial evidence, where a conspiracy is alleged, the circumstances must be tantamount to direct proof.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Conspiracy, § 26.]

10. INJUNCTION—INTERFERENCE WITH BUSINESS—TRADE UNIONS.
An injunction will not lie against individuals who conspire to interfere with the trade, business, or occupation of others, unless some injury has been inflicted on the person or some right of property has been invaded, destroyed, or prejudiced; the conspirators being amenable to punishment for violation of Pen. Code, § 168, prohibiting such acts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, §§ 172, 174, 175.]

11. SAME—APPREHENSION OF INJURY.
Mere apprehension of injury by future wrongful acts of members of a trade union during a strike are insufficient to justify an injunction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, §§ 8–11.]

12. SAME—PRELIMINARY INJUNCTION—DOUBTFUL RIGHT.
Where, in a suit for a strike injunction against certain trade unions and their members, the evidence adduced before a referee did not sustain the allegation of conspiracy, nor show ratification by the union of acts of violence committed by certain of its members, an injunction pendente lite could only be granted against such members of the union as could be identified as having committed acts of violence or intimidation, under the rule that, where plaintiff's right to equitable relief sought is doubtful, the court will not grant an injunction pendente lite, containing the same relief that would be ultimately granted if plaintiff succeeded on the trial of the action.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, § 358.]

Action by Thomas Russell & Sons against the Stampers' & Gold Leaf Local Union No. 22 and others. On motion to continue a preliminary injunction pendente lite. Granted in part.

Alfred E. Ommen, for plaintiff.

Stuart G. Gibboney (John Brooks Leavitt, of counsel), for defendants.

DAYTON, J. Motion to continue preliminary injunction. The parties defendant are Local Union No. 22 of the International Brother-

hood of Bookbinders, with Joseph A. Prout, individually and as president and the business agent of said union, and all other officers and members of said union, their agents, servants, and associates; Local Union No. 1 of said brotherhood, with Joseph P. Hand, individually and as president of said union, Frank E. Carter, individually and as secretary thereof, and all other officers and members, their agents, servants, and associates, and Michael B. Newman. The complaint, summarized, alleges that prior to January 3, 1906, the plaintiff, a corporation, employed members of Union 22 and thereafter made its bookbinding room "nonunion" and discharged the members of Union 22, except one girl; that prior to March 20, 1907, members of Union No. 1 were employed by plaintiff, but on that day declared a strike and required all its members to leave work, the object of which strike was to injure plaintiff's business, and to make the strike effective the defendant unions instigated, combined, and entered into an unlawful conspiracy by abuse, intimidations, threats, and violence to coerce and intimidate the other employés of the plaintiff, and to induce them to leave, and to force plaintiff to accede to the demands of said union; the plaintiff endeavored to fill with new men the places of the strikers, and could have done so, but for the malicious and unlawful interference of the defendant unions; that with intent to injure and destroy plaintiff's business and property the defendant unions are committing and intend to continue to commit acts of intimidation, abuse, and violence against the plaintiff and its employés. Here follows a recital of alleged acts committed at the instigation of the defendant unions, their officers and members: That on June 8, 1907, members of Unions Nos. 1 and 22 gathered in front of plaintiff's place of business, shouting opprobrious names, and in some instances following plaintiff's employés and threatening them with bodily harm; that prior to and since said acts the defendant unions endeavored to force plaintiff's employés to leave and to entice them away by abuse and threats of violence; that from the commencement of the lockout by Union No. 22 and the strike by Union No. 1 the defendant unions, their officers and members, in furtherance of a malicious and unlawful conspiracy to injure the plaintiff, have caused pickets and gangs of men placed at or near plaintiff's place of business by defendant unions, who demanded that plaintiff's employés join their unions, and that at the instigation of defendant unions gangs of men composed of members of defendant unions have lain in wait for and followed plaintiff's employés with threats and assaults, causing some of them to leave the city of New York; that women employés of plaintiff have been so threatened; that all the alleged acts were in furtherance of an agreement and unlawful conspiracy by defendant unions, their officers and members, to injure plaintiff's business and good will, and to force it to accede to the demands of defendant unions; and that plaintiff has been obliged to secure the services of special officers and to request police assistance, but all to no avail, and that none of the members of defendant unions have been abused or assaulted. The temporary injunction, issued ex parte, restrained the defendants, their officers, members, agents, servants, and associates: (1) From inducing or coercing, or attempting to induce or coerce, by any species of intimidation, threats, force, or fraud, any employé of

the plaintiff to quit the employment of the plaintiff; (2) from preventing or attempting to prevent, by any species of intimidation, threats, force, or fraud, any person from entering the employ of the plaintiff; (3) from any and all acts of intimidation, threats, force, or fraud toward any employé of the plaintiff; (4) from any and all unlawful interference with the property, property rights, or business of the plaintiff.

The defendant unions, being voluntary associations, were properly made parties under section 1919, Code of Civil Procedure, by service upon their officers, and an injunction issued against them and all their members was binding upon each and every member of the defendant unions. Beattie v. Callanan, 67 App. Div. 14, 73 N. Y. Supp. 518; Horseshoers' Protective Ass'n v. Quinlivan, 83 App. Div. 459, 82 N. Y. Supp. 288; Davis Machine Co. v. Robinson, 41 Misc. Rep. 329, 84 N. Y. Supp. 837; People v. Marr, 181 N. Y. 468, 74 N. E. 431, 106 Am. St. Rep. 562. The complaint sets forth a cause of action for threatened injury to person and property (Davis v. Zimmerman, 91 Hun, 489, 36 N. Y. Supp. 303; Dueber Watchcase Co. v. Howard Watch & Clock Co., 3 Misc. Rep. 582, 24 N. Y. Supp. 647), and was accompanied by a large number of affidavits, which were replied to and contradicted by numerous affidavits on the part of the defendants. Reference was ordered to Hon. Roger A. Pryor, "for the information of the court, to determine and report upon all the questions of fact arising upon the affidavits presented upon said motion." Seventeen witnesses were examined and cross-examined before Judge Pryor, the record thereof being nearly 400 typewritten pages, and the learned referee reported as follows:

"First. That the defendant unions are voluntary associations composed of more than seven persons; the defendant Joseph A. Prout and Joseph P. Hand being their respective presidents.

"Second. The only persons served in the action with summons and complaint were Joseph A. Prout, Frank E. Carter, and Michael B. Newman, who, together with the said Hand, duly appeared therein.

"Third. Acts of violence and intimidation were committed on the employés of the plaintiff.

"Fourth. Said acts were committed by members of said unions.

"Fifth. Said acts were committed in the interests and for the benefit of said unions.

"Sixth. None of the defendants were parties to a conspiracy to commit said acts of violence and intimidation, or committed, authorized, or sanctioned said acts."

The first and second paragraphs of the report of the learned referee appear to be conceded as facts. The third paragraph is sustained by the proofs. The fourth paragraph is sustained by the proofs to the extent that Simon Kriedman, a member of Union No. 1, called Charles A. Kirchner a scab and other names, for which Kriedman was arrested and fined $50 by a magistrate, and ――― Murray, a member of Union No. 22, followed Harry Erlander in the streets, for which said Murray was arrested and held in $500 to keep the peace. The testimony of a number of witnesses shows that there were acts of disorder committed by persons who were designated by the witnesses as members of one or the other of these unions; but, beyond the statement that the assaulting parties were such members, no proof of identification was furnished.

Samuel D. Tharp testified that he entertained Mr. Newman at his house, and that on one occasion Newman indirectly threatened violence by saying:

"This strike means the life or death of the union. We have gone into it to win either by fair means— I do not mean to say we will resort to violence, but we have got to win this strike."

He also testified that he was threatened with violence by a committee of Union No. 1 at his (Tharp's) house; but he subsequently said that no such threat was made at his house, but at a saloon where he (Tharp) was not present—that they never made any threats to him (Tharp), personally. Herman Schiff testified that Newman said to him: "When you come Monday morning, Monday night I will kill you." Mr. Newman denied this positively; also that he was arrested for having made that statement and was discharged by the magistrate. Joseph Canawa testified that he was met by a man six feet high, who called him a scab and a rat and said he had been in the employ of the plaintiff, and was at that time a member of Local Union No. 1, and that while he was talking the big man and some others kicked him; that he did not know the name of the large man, nor the names of the others; that a man named Gibbs called him a scab and a rat; and that Gibbs was arrested and held to keep the peace.

In his lectures on "Law—Its Origin, Growth, and Function," the late James C. Carter, discussing trial by battle, says:

"However, with the progress of industrialism, the effort to prevent violence would increase, and, if an injured party refused to be pacified after his adversary had offered the customary redress, the remonstrances of the fellow tribesman would be employed, and, if these failed, intimations, or a plain declaration, would follow that the tribe was determined upon peace, and, if the obstinate party persisted in his purpose, he would encounter a force dangerous only to himself. There is but one answer to this: He must leave it to some third person to say what he shall do, and this is arbitration, the sole possible resort which the parties to a deadly strife can have and preserve the point of honor, when one refuses to accept the redress offered by another, and is made aware that persistence in his purpose to take revenge upon another will cost him a sacrifice he is not willing to make. This is a lesson which has been taught to contending individuals or families through many ages in the past. Nations are beginning to learn it."

It is not practicable to review the testimony minutely. The fifth paragraph seems to me to be a conclusion of law. I am not persuaded that such acts could possibly have been "in the interest of and for the benefit of said unions." Indeed, the converse of the proposition is the most reasonable. As to the sixth paragraph, whether or not it be regarded as a mixed conclusion of law or of fact, I am of opinion that the plaintiff has failed to show the conspiracy alleged, and I approve this paragraph or finding, with an amplication thereof by adding that neither Mr. Prout nor Mr. Newman committed or were responsible for the acts of violence charged. A conspiracy is defined to be a combination between two or more persons, with the unity of design for a common purpose to do an unlawful act or a lawful act by unlawful means, and cannot be sustained by proof tending to establish merely separate causes of action against several defendants. Plaintiff cites Chalmers v. Reliable Lodge (C. C.) 111 Fed. 264, where, in order to

transact business, the Chalmers Company was by the act of defendant obliged to keep its employés "within its premises as in a fortress," and it was there conceded that the pickets were appointed and directed by defendant's officers and members, a situation not presented by the facts here.

It seems to be clear that the plaintiff declined to consider the demands of the defendant unions, and that a lockout or strike might have been avoided had plaintiff permitted discussion. "Undoubtedly, if capitalists and laborers could truly see wherein their welfare respectively lies it would be found that there was an interdependence between them, and that what was for the permanent and substantial good of either would in the long run be for the benefit of both." Macomber, J., Harvester Co. v. Meinherdt, 9 Abb. N. C., at page 402.

Each of the defendant association unions is an entity recognized by law. "A labor union organization is endowed with precisely the same right as an individual to threaten to do that which it may lawfully do." National Pro. Ass'n v. Cummings, 170 N. Y., at page 331, 63 N. E., at page 373. No authority holding that the unlawful acts of one or more members of a voluntary association ipso facto bind the association has been brought to my attention. Conclusive proof should appear upon which to base the charge that the defendant associations, as such, promoted or ratified the acts complained of; and, while this may be done circumstantially where a conspiracy is alleged, the circumstances should be tantamount to direct proof. The rights and obligations of labor union associations being discussed in the courts in the light of modern conditions. Until a labor union, as an association, shall be shown presumptively to have acted unlawfully, it is entitled to be regarded as a law-abiding body. Inferences solely from the acts of some of its members should not be sufficient to deprive it of that reputation, a status which plaintiff undoubtedly claims for itself. Is it the law that a presumption of guilt attaches to a labor union association?

This motion may be viewed in another aspect. In Thomas v. M. M. P. Union, 121 N. Y. 45, 24 N. E. 24, 8 L. R. A. 175, Chief Judge Ruger said:

"Individuals who by unlawful combinations seek to interfere with the trade, business, or occupation of others, with a view of injuring or embarrassing them in the prosecution of such trade or business, are subject to the penalties of the criminal law and become liable to criminal prosecution on the part of the people. Pen. Code, § 168. These are the only modes of redress open to parties generally for injuries occasioned to them through the voluntary combination of others engaged in similar employments, with a view of influencing and controlling the general conduct and management of such trade or employment. * * * It is only when some injury has been inflicted on the person or some right of property has been invaded, destroyed, or prejudiced by the action of such corporation that a member is entitled to maintain an action in the courts for redress or protection."

In Reynolds v. Everett, 144 N. Y. 189, 39 N. E. 72, the complaint charged conspiracy among workmen to injure plaintiff's business by intimidation and threats. A temporary injunction was granted restraining the defendants from aiding the strikers. The court, by Judge Gray, said:

"The finding of the trial justice was, and it appeared upon the trial as an uncontroverted fact, that the so-called 'strike' began on a certain day and was then over, and there no longer existed that condition of things in which the complainants had sought the aid of a court of equity. * * * The mere apprehension of some future acts of a wrongful nature which might be injurious to the plaintiffs was not a sufficient basis for insisting upon the preventive remedy of a final injunction. Such a remedy becomes a necessity only when it is perfectly clear upon the facts that, unless granted, the complainant may be irreparably injured, and that he can have no adequate remedy at law for the mischief occasioned. * * * The discretionary exercise of a court's authority in dismissing the complaint could very well rest upon the failure to make out a case sufficiently strong to move the court to exercise its extraordinary equitable powers and be, in addition, justified by the discontinuance of the acts complained of."

Both sides have had an opportunity to produce witnesses before Referee Pryor. It is doubtful whether a trial of the action would adduce other testimony. "Where the plaintiff's right to the equitable relief sought is enveloped in doubt, the court will not grant an injunction pendente lite containing the same relief that could ultimately be granted if plaintiff succeeded upon the trial of the action." Blanchard, J., Butterick Pub. Co. v. N. Y. Typo. Union No. 6, 50 Misc. Rep. 1, 100 N. Y. Supp. 292. No proof was offered to show that the defendant unions or any of their members intend in the future to perpetrate any of the acts charged. The examination and cross-examination of Mr. Newman seem to demonstrate an intelligence quite remote from the intentions and acts alleged against him personally or officially. It is true that the lockout and strike referred to in these papers resulted in some disorder and in annoyance to the plaintiff. It is also true that many not members of either of these unions were participants; but this bare statement does not establish a rule that the defendant unions or their members generally are therefore amenable to this process. The members of either of these defendant unions who committed acts of violence should be severely disciplined, if not expelled from the unions and publicly prosecuted. No labor union association can maintain its self-respect, the respect of the community, obtain the protection of the law, or progress its cause, which does not denounce and punish any member who, directly or indirectly, countenances or encourages any violence or intimidation by word or deed.

It is argued that the continuance of this injunction order can do no harm, as it restrains only that which every law abiding citizen would not commit. I understand that this powerful remedy will not be issued except its "necessity is perfectly clear on the facts." If this be not so, an injunction order may be issued as a matter of course on any pretext —a proposition repugnant to the proper administration of justice.

All members of either of the defendant unions who can be named and identified as having committed acts of violence or intimidation should be enjoined. In other respects the motion to continue injunction order denied.