75 Hun, 558; affd., 143 N. Y. 640; *Clifford* v. *Kampfe*, 147 id. 383, affg. 84 Hun, 393.)

Upon reargument, interlocutory judgment affirmed, with costs, with leave to the plaintiff to plead over within twenty days upon payment of the costs of the demurrer and of this appeal.

---

LOUIS BOSSERT and JOHN BOSSERT, Copartners Doing Business under the Trade Name of LOUIS BOSSERT & SON, Respondents, v. FREDERICK DHUY and Others, Individually and as Business Agents of the Joint District Council of New York and Vicinity of the United Brotherhood of Carpenters and Joiners of America and Amalgamated Society of Carpenters and Joiners of America and Others, Appellants.

Second Department, November 27, 1914.

Labor unions — refusal of carpenters to work on non-union material — injunction — right of representatives of carpenters' union to refuse to use trim manufactured by one of several non-union firms — action against unincorporated associations — practice of law by corporation.

Where the labor representatives of certain associations of carpenters and joiners without any grudge or personal malice, in pursuance of a plan to compel all non-union mill owners in the vicinity engaged in the manufacture of doors, sash and inside trim to employ union labor, called a strike and thereby, within a week, stopped the work on four buildings where trim manufactured by one of the non-union mill owners was used, and also circulated lists of union mills in the vicinity, with a statement that the labor union would refuse to handle shop-made carpenter work unless constructed under union conditions, with a list of manufacturers who were working under an agreement with the union, the non-union mill owner is entitled to have a preliminary injunction against the labor representatives continued by final judgment.

Every member of an unincorporated association may be sued, and, if they are numerous, some officers or members may be made parties defendant as representatives of a class.

The fact that a manufacturer is a member of the American Anti-Boycott Association, and is entitled to the assistance of the counsel of such association, cannot be availed of by representatives of a labor organization in a suit against them, upon the ground that the plaintiff was violating section 280 of the Penal Law.

APPEAL by the defendants, Frederick Dhuy and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Kings on the 15th day of May, 1913, upon the decision of the court after a trial at the Kings County Special Term.

· *William P. Maloney* [*Charles Maitland Beattie*, with him on the brief], for the appellants.

*Walter Gordon Merritt*, for the respondents.

Judgment affirmed, without costs, upon the opinion of Mr. Justice PUTNAM at Special Term. (See, also, *Newton Co.* v. *Erickson*, 70 Misc. Rep. 291; affd., 144 App. Div. 939.)

JENKS, P. J., BURR, THOMAS, CARR and RICH, JJ., concurred.

The following is the opinion delivered at Special Term:

PUTNAM, J.:

Plaintiffs are Brooklyn non-union mill owners, engaged in manufacture of doors, sash and inside trim used in the building trade. Their suit is against certain representatives of the Joint District Council of the United Brotherhood of Carpenters and Joiners of America, and other defendants, to restrain them from refusing to work upon plaintiffs' material, and from calling strikes against it. Plaintiffs employ over 500 wood workers in manufacturing doors and trim. This mill production is sold as general merchandise, as the plaintiffs' firm does not itself install the manufactured material in buildings. Part of plaintiffs' trim, especially doors, is purchased from other factories, chiefly from non-union shops in other States.

The organized carpenters have long felt the competition of machine wood workers. As the factory produces more of the interior fittings of buildings, the field of carpenter labor has been narrowed, so that in 1894 the carpenters sought a jurisdictional agreement with the machine wood workers, which was afterwards abrogated, and in 1903, the difficulties led to an arbitration between these bodies. (Hollander & Barnett Studies in American Trade Unionism [1906], 311.) The conflict in Manhattan has had many setbacks, and even a disas-

trous lockout by the building trades in 1906, but with the present result that in Manhattan, and partially in the Bronx, the building trades have become strongly unionized, so that the organized carpenters are able to enforce upon the Manhattan and Bronx builders an exclusion of non-union trim from the larger and more important new construction.

The working agreement between the Manufacturing Wood Workers Association and the United Brotherhood of Carpenters and Joiners of America covering the term of three years from January 1, 1910, provides that the wood workers confine themselves to manufacturing trim, but that they shall not install or erect material; and the carpenters agree not to erect any trim (with exception of sash one and three-eighths inches thick and under) which has been made in non-union factories. Carrying out this plan, unions of manufacturing wood workers were formed, and only such union members are to be employed in the mills of the Manufacturing Wood Workers Association.

However, in the borough of Brooklyn the larger shops were mostly non-union. To extend the influence of the union the carpenters sought in 1910 to enforce an exclusion of non-union trim in building operations in this borough. This was voted at the convention of the United Brotherhood of Carpenters held in September, 1910, where a campaign of organization was directed against some large so-called unfair mills in Brooklyn. Except in some municipal jobs, the non-union mills had encountered no strike against the use of their materials, which they had been furnishing to builders and contractors. However, in the fall of 1910 the secretary of the Brooklyn Builders Association was informed by the labor organizers of the claim that the further use of non-union trim would lead to trouble, followed by warnings that these trim mills were going to be unionized. Eventually, on or about September 15, 1910, four strikes were called in one day against building operations where the trim of the Albro J. Newton Company was used. It was announced that the purpose was to organize these industries, mentioning several large non-union concerns, which were to be taken up one at a time, beginning with the Newton Company. All of these Newton strikes were eventually arranged by the builders agreeing not to use any more non-

union material. The Newton Company sought relief by injunction proceedings, in which the Special Term held that plaintiff was entitled to restrain defendants from thus conspiring to attack the plaintiff's good will. (*Newton Co.* v. *Erickson*, 70 Misc. Rep. 291; affd., without opinion, 144 App. Div. 939.) Subsequently in the *Newton* case a final decree was rendered making permanent that injunction.

About October, 1911, strikes essentially similar to those against the Newton Company occurred against the trim of L. Bossert & Son, the present plaintiffs. Work stopped on four Brooklyn building operations using plaintiffs' trim. One was on October second, which was followed by the other three strikes in which the men left on the following Saturday, October ninth. In these cases, the trim had been openly delivered from plaintiffs' wagons, bearing their name, and receipt tickets with like imprint had been signed by the union foreman on the different jobs. Defendants for the time concentrated their opposition upon the material from a single mill, since a general strike against all non-union material would be too costly for the labor organization. The labor representatives, however, did not hesitate to say that they proposed to take care of the other concerns afterwards. The plaintiffs applied for a preliminary injunction to restrain the defendants, which, following the *Newton* decision, was granted by the Special Term on October 20, 1911.

Subsequently the question of compliance with this temporary injunction was raised upon affidavits which charged John Rice, one of defendants' organizers, with calling off the union men from work on plaintiffs' material as it was being erected by Goldberg & Smith, who were contractors upon a building in Manhattan. That motion failed, as it was found as a fact that the purpose of stopping work was not to injure or interfere with plaintiffs' good will, but was in the exercise of lawful rights of the union men to refuse to sell their labor. (*Bossert* v. *United Brotherhood of Carpenters*, 77 Misc. Rep. 592.)

Upon this hearing the defendants objected to the joinder as defendants of the representatives of the Joint District Council of the United Brotherhood of Carpenters, the Executive Board of the United Brotherhood of Carpenters and Joiners

of America and the Amalgamated Society of Carpenters and Joiners of America. It was urged that an injunction suit does not lie against such unincorporated bodies.

There is no such legal entity as an unincorporated association. Every member of such association may be sued, and if the members are numerous, some officers or members may be made parties defendant as representatives of a class. (Code Civ. Proc. § 1919; *Heaton* v. *Hull*, 28 Misc. Rep. 97; 51 App. Div. 126; *People ex rel. Stearns* v. *Marr*, 181 N. Y. 463; *Russell & Sons* v. *Stampers & G. L. L. Union No. 22*, 57 Misc. Rep. 96.)

Upon the opening of the trial it was further urged that because plaintiff was a member of the American Anti-Boycott Association, and had the assistance of Mr. Merritt as counsel of that association, it was violating the Penal Code (Art. 280),* and that, therefore, this court should decline to entertain this suit. Even if the association of manufacturers by which the payment of dues entitling members to obtain legal assistance were within this penal statute, it does not follow that this action fails. Such arrangements between a plaintiff and its attorneys cannot be availed of by defendants in the suit. (*Boone* v. *Chiles*, 10 Pet. 177; *Motion Picture Patents Co.* v. *Ullman*, 186 Fed. Rep. 174.)

The full and elaborate proofs in this hearing raise squarely the right of the organized body of carpenters to single out one non-union mill, and direct their members to refuse to work on material which it produces, as a step in the conflict which the labor organization is conducting against non-union mills in Brooklyn borough. The testimony has shown that in Manhattan the struggle has resulted in favor of the exclusive use of trim produced under union conditions, and that this situation is now accepted by large builders of Manhattan, and certain mutual advantages therefrom to builders as well as workmen appear to be acknowledged.

There is no evidence of any grudge or personal malice against the plaintiffs, whose material was singled out for attack for reasons of convenience, in pursuance of a plan to

* *Sic.* See Penal Law, § 280, added by Laws of 1909, chap. 483, as amd. by Laws of 1911, chap. 317.—[REP.

refuse to handle non-union material by means of successive strikes against individual manufacturers so as eventually to bring it about that only the factory-made trim produced under union conditions shall be handled by the carpenters. Defendants do not circulate unfair lists or make threats to boycott opposition plants. They do, however, circulate lists of union mills in New York and vicinity, with a statement that the labor union will refuse to handle shop-made carpenter work unless constructed under union conditions, with a list of manufacturing firms who are stated to be working under an agreement with the joint district council.

The question here is in narrow compass. Can the joint district council — exercising the right of its members to labor or to withhold their labor — discriminate against the plaintiffs' mill, and refuse to handle the plaintiffs' material, as distinguished from other non-union trim? The strike committee having decided that plaintiffs' shop carpenter work is obnoxious to its organization, and having a right to refuse to work with or without giving any reason, here maintains that it may strike against the material made by plaintiffs, but for the time suffer their non-union rivals to continue their production, at least until after plaintiffs' mill shall be reduced to submission. Thereby the labor organization may be said to act affirmatively and aggressively, as the damage to the good-will and business of the plaintiffs is the specific object aimed at, the direct result sought. Granted that the selection of the plaintiffs was made with no personal hostility, and was an act to affect ultimately the whole body of non-union mill owners, the destructive result to plaintiffs is not mitigated. The refusals to work on plaintiffs' trim so nearly simultaneous, in October, 1911, were in the eye of the law affirmative and aggressive, and not merely negative.

It is, however, forcibly urged that so long as the public peace is kept, and unless a strike or lockout be malicious in fact, courts should not interfere in such an economic conflict.

This, however, is for a higher court, or for the Legislature.

In October, 1911, when these strikes occurred, the law of this precise situation and the rights of the open shop producer in this judicial district had been settled and determined by

the *Newton* case, which, until overruled, controls this Special Term.

The plaintiffs under that authority are, therefore, entitled to have the temporarv injunction continued by final judgment, with costs.

Decree to be settled upon two days' notice.