BORDEN'S FARM PRODUCTS COMPANY, INC., et al., Plaintiffs, *v.* FRED J. STERBINSKY, Individually and as President of MILK WAGON DRIVERS' UNION, LOCAL No. 584, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, etc., Defendants.

(Supreme Court, Kings Special Term for Motions, January, 1922.)

Injunction — conspiracy — labor unions — mandatory injunction granted requiring former drivers of milk wagons to surrender route books — books deposited in court for inspection by both parties.

By a contract of employment between the plaintiff milk companies and the drivers over their various milk routes, providing that each driver should receive a salary and commissions

Supreme Court, January, 1922.          [Vol. 117.

on collections, it was agreed that the driver should fully account for and pay over to his respective company such collections and should deposit a certain sum, in some cases $150 and in some cases less. It was the duty of the respective drivers to enter in the route book delivered to them by the plaintiff companies the various sales effected by said drivers during the month and at the end of the month to turn back to the company the books, balance to show the amount due to the respective companies from the customers dealt with by the respective drivers. The drivers who are members of the local labor union went on strike the last day of October, 1921, and with substantial unanimity refused to turn in the route books. In an action charging the president and members of the local union with conspiring to withhold the route books, the prayer for judgment contained the following: " That defendants be required to surrender and deliver all route books in their custody and possession to the respective plaintiffs issuing them." *Held,* that though the court was satisfied that a mandatory injunction requiring the defendants and each of them to deliver the route books to the control and possession of the plaintiff companies was proper, yet because each of the individual drivers by virtue of the entries made by each, of his October sales, has also the property rights or interest in the book issued to him, the relief demanded by the complaint should be modified so as to direct that the defendant local unions, their officers, agents, and each and every one thereof who had not returned their books to the respective plaintiff companies, shall deposit said books in court, where, under the order of the court, either side may have such proper access to them as may protect the interests of each of them.

MOTION for mandatory injunction.

Alger & Coughlan (Walter Gordon Merritt, of counsel), for the motion.

John B. Johnston, in opposition.

DIKE, J. An order is here sought requiring the defendants and each of them to deliver certain route books in their respective custody, control and posses-

sion to the respective plaintiffs, the plaintiffs being various milk companies, and the ones against whom this order is especially sought are the drivers of the milk routes for the various plaintiff companies, such delivery of route books to the plaintiffs to be made into this court, subject to the rights of the respective plaintiffs in interest, to inspect and copy therefrom under such regulations as the court may prescribe.

From the affidavits it appears that a contract of employment was entered into between the respective plaintiffs and the drivers of their various milk routes. That while there may be some modifications in the contracts as made by the plaintiff companies, in the main, they provide for a salary to each driver, commissions on collections, and it was also agreed that the driver shall fully account for and pay over to his respective company such collections and each driver shall deposit a certain sum, in some cases $150 and in some cases less. In the route books so delivered by the respective plaintiff companies to the drivers it was the duty of the respective drivers to enter the various sales made and effected by said drivers during the month and at the end of the month to turn back to the company the books balanced by the driver showing the amount due to the respective companies from the customers dealt with by the respective drivers. This balanced book, therefore, became the basis of a personal accounting between the plaintiff companies and their respective drivers, and while the book itself was the property of the plaintiff companies and the entries of sales were of obvious vital interest to the plaintiff companies, such entries became equally of interest to the drivers as a basis for their commissions in many cases.

This is another phase of the situation that has developed between the plaintiff companies and the

Supreme Court, January, 1922.     [Vol. 117.

defendants under the strike of the drivers that was called on October 31, 1921. The preliminary injunction that was obtained by the plaintiff companies dealt with this phase of the situation and forbade the defendants from attempting to interfere with the plaintiffs " by collecting moneys from any customers of the plaintiffs on account of sales of milk made to said customers on behalf of any of the plaintiffs and by destroying or defacing the route books which may be in the custody or possession of said local unions Nos. 584, 147 or 125 or any of their officers or members." And in the complaint, the prayer for judgment contains the following: " That defendants be required to surrender and deliver all route books in their custody and possession to the respective plaintiffs issuing them."

It appears that the members of Local Union No. 584, who went on strike have, with substantial unanimity, refused to turn in the route books. The total number of books so withheld, according to one affidavit, is 2,200 books. The total number of customers on said books is over 400,000. The amount of uncollected accounts is stated to be over $1,500,000. On an average, about 225 customers, with their addresses, should appear in each individual book. It is obvious that a serious situation arises because the plaintiff companies are powerless, by not possessing these books, to know who their customers for the month of October were and what the amount of the individual indebtedness of each customer was.

It is apparent that the individual members of the unions cannot be punished for contempt in case any order of the court should be made directed against them unless the court is satisfied that they have knowledge of the injunction, it being conceded that none of the individual drivers have been served and that the

president of the union alone has appeared. If, however, the court is satisfied that such defendant drivers have knowledge, it would seem that they would be amenable to punishment.

The unionization of labor has developed rapidly in the last few years and the organizations have become more elaborate as well as more extensive. The court must assume that in such labor unions there is complete organization as would be expected in such elaborate associations, that members are amenable to discipline and that members are subject to notice from their officers. It is inconceivable, after the publicity given to the injunction order of Mr. Justice Kelby, that any member of these unions is ignorant of its provisions. The injunction here runs against the president named and each and every one of its members. In the case of *People ex. rel. Stearns* v. *Marr,* 181 N. Y. 463, which involved punishment for contempt in violating a strike injunction, the court said in part: " The Iron Moulders' Union was a party to the action and the mandate was addressed not only to it and ' its each and every member,' but to all the defendants, their agents, representatives and coadjutors, as well as to those connected with them. The appellants were members of the union, were employed by it to act as pickets around the plaintiffs' plant, and each was paid at the rate of a dollar a day for his services in that capacity. They were parties to the injunction because they were mentioned therein as members of the union. They were the agents and employees of a party, *eo nomine,* engaged in doing its work and subject to the same punishment as if they had all been formally named as parties defendant." There are other cases, such as *Russell & Sons* v. *Stampers & Gold Leaf Local Union No.* 22, 57 Misc. Rep. 96; *Bossert* v. *Dhuy,* 166 App. Div. 251, 253, and in the United States court in the case

Supreme Court, January, 1922.     [Vol. 117.

of *Wallace* v. *Adams*, 204 U. S. 415. In the New York cases, knowledge on the part of the persons not made parties by name seems to be an essential element, as is set forth in *People ex rel. Stearns* v. *Marr, supra,* and *Rigas* v. *Livingston,* 178 N. Y. 20; and *Matter of Lennon,* 166 U. S. 548, where it is said: " To render a person amenable to an injunction, it is neither necessary that he should have been a party to the suit in which the injunction was issued, nor to have been actually served with a copy of it, so long as he appears to have had actual knowledge.''

The gist of the bill of complaint is conspiracy. It is urged that the members of Local Union No. 584 are conspiring together to withhold the route books. Another Union Local No. 147, upon direction of its president, immediately delivered the route books to the respective employers. I, therefore, feel that a mandatory injunction is proper, but I also feel that each of these drivers by virtue of the entries made by each one of his October sales, has also a property right or interest in the book issued by the respective plaintiff companies, and it is for that reason that I modify the relief demanded by the plaintiff companies and direct that the defendant local unions, their officers, agents, and each and every member thereof who have not returned their books to the respective plaintiff companies shall deposit said books in this court, where either side may have such proper access to them under order of the court, as may protect the interests that each may have therein.

Motion granted.