(74 App. Div. 110.)

HERZOG et al. v. FITZGERALD et al.

(Supreme Court, Appellate Division, Second Department.  July 1, 1902.)

1. MASTER AND SERVANT—STRIKING EMPLOYES—INJUNCTION.
   Where striking employés picket the works of the master, and use threatening language to intimidate other employés into leaving the master's employ, and forcibly drag an employé across a street in an endeavor to prevent him from entering the master's works, the latter is entitled to an injunction restraining such actions, though there has been no bloodshed.

2. SAME—INJUNCTION PENDENTE LITE.
   The rule that an injunction pendente lite will not be granted when the facts stated in the complaint are denied by defendant has no application to a suit to restrain striking employés from intimidating other employés by threats and violence, which acts are denied by defendants, as the rule only applies when the right to do the act restrained is in issue.

Appeal from special term, Kings county.

Injunction by Frank J. Herzog and another against J. L. Fitzgerald and others.  From an order denying an injunction pendente lite, plaintiffs appeal.  Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

H. V. Rutherford, for appellants.

Frank X. McCaffry, for respondents.

HIRSCHBERG, J.   The plaintiffs are copartners engaged in the business of bookbinding in the borough of Brooklyn, and employ, on the average, 35 employés in their business.   On the 17th of March, 1902, a majority of such employés engaged in a "strike," leaving the plaintiffs' service in a body.   The cause and object of the strike are wholly immaterial.   The strike was a lawful act, whatever motive may have inspired it, and so long as it was unaccompanied by violence, threats of violence, intimidation, or unlawful acts of coercion.   But the verified complaint alleges (and many affidavits were presented at the special term in support of the allegation) that the strike has been accompanied on the part of the defendants, as participants or sympathizers, with threats of violence, acts of violence, threats of coercion, acts of coercion and intimidation, "picketing" the plaintiffs' premises, the use of vile and abusive language, and other familiar devices for the purpose of preventing the plaintiffs from obtaining the peaceful services of others who are willing and anxious to take the places abandoned by the strikers, and of forcing compliance by the plaintiffs with the strikers' demands.   It is unnecessary to detail the threats and acts of intimidation and violence which the affidavits disclose.   They are such as were well calculated to occasion fear in the minds of the plaintiffs' present employés that a continuance in such employment would result in bodily harm.   They include threats to "do" these workmen unless they would join the strike; to "fight them man to man"; to "beat every man that works in that shop"; to "fix" them so that they could never get another position in the

¶ 1. See Injunction, vol. 27, Cent. Dig. § 175.

United States; to lay for them and blow their heads off; to blow their brains out; to "lick" the men at night if they keep on working for the firm; and in one instance to paint a workman "so black that the dogs won't eat bread" out of his hand, etc. One of these employés (a girl 19 years of age) was visited by some of the defendants at her home, and charged by them with being improperly intimate with one of the peaceful workmen, and was not only threatened personally in case she failed to use her influence to get this workman to join the strike, but was assured that the defendants would "blow his brains out." The actual violence exerted is also detailed in the affidavits, and consists in the forcible seizure of the person of one of the workmen by the arm, and the pulling of him across the street, in an endeavor to prevent him from entering the plaintiffs' premises. The denials on the part of the defendants, so far as there are any denials, consist chiefly in the reiteration of the general assertion that "at no time were any threats, force, or intimidation used or attempted to be used by deponent," and that what was done was "in a peaceful and lawful way." Upon the facts disclosed, the plaintiffs were clearly entitled to the injunction. Davis v. Zimmerman, 91 Hun, 489, 36 N. Y. Supp. 303; Association v. Delaney, 48 App. Div. 623, 62 N. Y. Supp. 750; Curran v. Galen, 152 N. Y. 33, 46 N. E. 297, 37 L. R. A. 802, 57 Am. St. Rep. 496. It was not necessary that bloodshed should precede the application. It is sufficient that the intent to resort to bloodshed if deemed necessary to accomplish the unlawful purpose is distinctly manifested. As was said of injunctive relief in a similar case by the general term in the First department in Davis v. Zimmerman, page 494, 91 Hun, and page 306, 36 N. Y. Supp.:

"It is far better for employers and employés, and for the peace and safety of the state, that such relief be exercised by the courts, where parties can be heard, than to permit such violations of law to go unrestrained until force is arrayed against force, and the strong arm of the executive is compelled to intervene with troops. to prevent disorder and the destruction of property. The defendants invoke the general rule that when all of the equities of a complaint are denied in the answer an injunction will not be granted pendente lite, or, if granted, will be vacated. This rule applies when the litigants claim adversely in respect to property, or the right·to do some act in connection therewith, and, the plaintiff's asserted right being doubtful, an injunction will not be granted. But this rule is not applicable to the case at bar, for the defendants do not assert the right to do any of the acts which they are restrained from doing. They do not assert that they have a right to intimidate, by threats or by violence, persons in the employment of the plaintiff, or those who seek his employment, nor do they claim that they have a right to destroy the plaintiff's property; and it is only from doing and conspiring to do such acts that they are restrained."

The order should be reversed, with $10 costs and disbursements, and the injunction granted, restraining the defendants from the commission of acts of violence, and also from threats or attempts to commit such acts. All concur.