(82 App. Div. 7.)

## BEATTIE v. CALLANAN et al.

(Supreme Court, Appellate Division, First Department. April 9, 1903.)

1. LABOR UNIONS—WALKING DELEGATES—STRIKES—THREATS—INJUNCTION.
    Where a labor organization maliciously induced persons contracting with plaintiff to violate their contracts, and threatened to continue to do the same in the future, and caused a strike of all plaintiff's workmen engaged on two different pieces of work which plaintiff had contracted to do, merely because plaintiff refused to recognize the walking delegate of the union or to recognize "the union in any way," plaintiff was entitled to an injunction to restrain the continuance of such acts.

Appeal from Special Term, New York County.

Action by John Beattie against David Callanan and others. From a judgment denying an injunction, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Joseph Fettretch, for appellant.
Ingle Carpenter, for respondents.

¶ 1. See Injunction, vol. 27, Cent. Dig. § 175.

McLAUGHLIN, J.   The plaintiff is a master painter, and in July, August, and September, 1901, had contracts for doing certain work in painting and decorating a building located at 987 Fifth avenue, and also on the Church of New Jerusalem, in the city of New York. The defendant association, the Amalgamated Painters & Decorators of New York, is an unincorporated labor association of expert journeymen, painters, and decorators in such city, of which the defendant Callanan is the president, and the defendant Healy one of the business representatives, commonly called "walking delegate." This action was brought to enjoin and restrain defendants from doing certain acts threatened to be done, which, it is alleged, if permitted, would seriously interfere with the property rights and business of the plaintiff, and by reason thereof cause him serious damage. A preliminary injunction was granted, ex parte, restraining the defendants from committing the acts complained of, with an order to show cause why the same should not be continued during the pendency of the action. Upon the return of the order, the preliminary injunction was vacated, but on appeal to this court that order was reversed, and the injunction continued during the pendency of the action. 67 App. Div. 14, 73 N. Y. Supp. 518. Upon the trial, notwithstanding that the plaintiff established by competent proof the material facts set out in the papers upon which the preliminary injunction was granted, the court dismissed the complaint upon the ground, as appears from the decision made, that the case could not be distinguished, "in principle, from National Protective Association v. Cumming, 170 N. Y. 315 [63 N. E. 369, 58 L. R. A. 135, 88 Am. St. Rep. 648]"; and the plaintiff has appealed from the judgment subsequently entered dismissing the complaint on the merits.

The judgment must be reversed. The facts established at the trial do not bring this case within National Protective Association v. Cumming, nor has the principle there announced any application whatever. On the contrary, by reason of such facts the case comes squarely within our former decision, and the principle laid down in Curran v. Galen, 152 N. Y. 33, 46 N. E. 297, 37 L. R. A. 802, 57 Am. St. Rep. 496. The question presented in National Protective Association v. Cumming was one between two rival labor organizations, and the court held that a labor union did not commit an unlawful act by refusing to permit its members to work with fellow servants who were members of a rival organization. In Curran v. Galen the question was whether a labor organization had the right to procure the discharge of an employé because he would not become a member thereof. The Court of Appeals held that a labor union had no such right, and in so holding the court (in which all of the members concurred) said:

"Public policy and the interests of society favor the utmost freedom in the citizen to pursue his lawful trade or calling, and if the purpose of an organization or combination of workingmen be to hamper or restrict that freedom, and, through contracts or arrangements with employers, to coerce other workingmen to become members of the organization, and to come under its rules and conditions, under the penalty of the loss of their position and of deprivation or employment, then that purpose seems clearly unlawful, and militates against the spirit of our government and the nature of our insti-

tutions. The effectuation of such purpose would conflict with that principle of public policy which prohibits monopolies and exclusive privileges."

Here the sole question is whether the defendants, because the plaintiff would not in a formal way recognize the association, or for an alleged affront to its walking delegate, have the right to maliciously cause parties who have entered into contracts with him to deliberately break them, by means of threats to cause, or actually causing, a strike of all the workmen in the employ of such parties. That they have not such right was clearly and unmistakably announced on the appeal from the order vacating the preliminary injunction; the court then saying that the case furnished "no authority for a resort to fraud, intimidation, force, or threats," except within the limitation announced in the Cumming Case, 53 App. Div. 227, 65 N. Y. Supp. 946, and that, upon the facts then presented—and the facts established upon the trial were even stronger than those were—"the plaintiff was entitled to an injunction restraining the defendant from interfering in any manner with the business of this plaintiff by resorting to intimidation, force, or fraud, or by such acts injuring the business of the plaintiff, or preventing the members of the defendants' organization from working for the plaintiff, or preventing other men employed by him from working for the plaintiff, or upon any contracts with which he is connected."

The defendants, by causing a strike of all the workmen engaged on the building at 987 Fifth avenue, caused Leeds, through his representatives, Hunt & Hunt, to deliberately break the contract which they had made with the plaintiff, and, in causing a general strike upon the work at the New Jerusalem Church, caused James C. Hose Sons to deliberately break their contract; and, if the plaintiff should procure other contracts, it is quite apparent that the same methods will be resorted to, as in the two instances stated, to induce parties contracting with him to violate their agreements. This was done, and in the future is threatened to be done, not because the plaintiff refused to employ union labor or to pay union wages, but simply because, according to the uncontradicted testimony of the defendant Callanan, the plaintiff refused to recognize the representative of the union, or "the union in any way." The methods here employed to compel the plaintiff to accede to the demands of the defendants are unjust, unreasonable, and such as the law does not recognize and will not tolerate. As well might the defendants resort to physical force to enforce alleged rights or redress real or imaginary wrongs. It clearly appears that they were actuated by improper motives and by a malicious desire to injure the plaintiff; and, this being so, the plaintiff was entitled to relief, within all the authorities to which our attention has been called.

Upon a careful consideration of this record, we are of the opinion that an injunction should have been granted to the extent indicated on the former appeal, and that the court erred in not so holding. The judgment appealed from, therefore, must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.