(67 Misc. Rep. 221.)

SCHLANG et al. v. LADIES' WAIST MAKERS' UNION, LOCAL 25, I. L. G. W. U.

(Supreme Court, Special Term, New York County. April, 1910.)

1. INJUNCTION (§ 137*)—TEMPORARY INJUNCTION—WHEN DENIED.
     An injunction pendente lite will not necessarily be denied unless the litigants claim adversely as to property or the right to do some act in connection therewith.
     [Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 307, 309; Dec. Dig. § 137.*]

2. INJUNCTION (§ 101*)—RESTRAINING LABOR UNION—BOYCOTT.
     Plaintiffs, when boycotted by a trade union, may have an injunction to restrain the members of such union from causing other manufacturers by threats of strike to cease manufacturing goods for plaintiffs.
     [Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 174, 175; Dec. Dig. § 101.*]

Action by Harry Schlang and Jacob M. Livingston against the Ladies' Waist Makers' Union, Local 25, I. L. G. W. U. Motion for an injunction. Granted.

Charles Dushkind, for plaintiffs.
Frederick L. Taylor and Miles M. Dawson, for defendant.

GERARD, J. The plaintiffs are manufacturers of ladies' shirt waists, and have a factory on Greene street in the city of New York Their employés are on strike; striking not for shorter hours or greater wages, but for the purpose of denying to plaintiffs the right to hire such employés as they choose. The striking employés seek to force

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plaintiffs to agree to employ no persons not members of the union of which the strikers are members. In numerous cases in state and federal courts decisions have been made in strike cases which lay down rules for the conduct of the contest. For instance, it is held that a strike is a lawful act, but it must not be accompanied by acts of violence, by threats of violence, intimidation, or acts of coercion. Herzog v. Fitzgerald, 74 App. Div. 110, 77 N. Y. Supp. 366. The strikers may "picket" the employer's place of business and strive by reason, argument, and proper appeal to win over those who have taken, their places; but such picketing, argument, reasoning, and entreaty must not be so carried on as to amount, in effect, to intimidation, threats, coercion or force. Even persuasion and entreaty may be used in such a manner, with such persistency, and with such environment as to constitute intimidation. Butterick Publishing Company v. Typo. Union No. 6, 50 Misc. Rep. 1, 100 N. Y. Supp. 292, and cases cited in the opinion in that case. Therefore, the first question to determine in this case is, are these quasi rules relating to strikes being broken by strikers; and are the particular defendants here participating in these acts? It is to be noted that the general rule that, when all the equities of a complaint are denied in the answer, an injunction pendente lite will not issue does not apply here, because the defendants do not assert that they have the right to intimidate by threats of violence persons in the employ of plaintiffs. The rule regarding the denial of an injunction pendente lite only applies when the litigants claim adversely in respect to property or the right to do some act in connection therewith. Herzog v. Fitzgerald, supra. The acts complained of here are: First, alleged unlawful picketing through acts of violence, intimidation, or coercion; and, second, unlawful interference with plaintiffs' business by inducing or coercing other firms from dealing with plaintiffs. No acts of violence, intimidation, or coercion are alleged to have been actually committed by any defendant; but it is alleged that they have conspired together to do such acts. It appears that certain of the plaintiffs' striking employés have been arrested; but I find nothing in the papers to connect the defendants with any of these acts of violence, and therefore will not continue the injunction in this particular; such denial is, however, without prejudice to a renewal of this motion on other papers. An interesting question occurs on the other branch of the case. It seems to be well established that the defendant union has called a strike in shops of other employers for no other reason than because they made shirt waists for plaintiffs. Hyman Brandes makes affidavit that his employés went on strike, then he settled with them and made his shop a union shop; that before settling he had completed some work for the plaintiffs; that the union delegate in his shop, one Feinbaum, ordered the men in his shop not to deliver these goods, and that a strike has been threatened in his shop if he delivers these goods. Barnet Rabinowitz, a shirt waist manufacturer, makes affidavit that he settled with the union and at the time was making some goods for plaintiffs; that one of the defendants, Weinstein, warned him not to finish the goods; that since then employés of plaintiffs

called at his shop and ordered his workers to strike. The affidavit of Abraham Sitower is material against defendants on this issue. It shows that he met defendants Goldstein, Weinstein, and Schoyber at the union headquarters and they made him sign a paper as follows: "I agree to pay three hundred dollars to the Ladies' Waist Makers' Union, Local 25, I. L. G. W. U., in case it will be proved them that I am selling or making waists direct or indirect for the firm· of Blum & Weilbaum." Blum & Weilbaum are not the plaintiffs here, but their employés are also on strike. These allegations are not denied, and the question is whether the defendants can be restrained from causing others by threats of strikes to cease manufacturing shirt waists for the plaintiffs.

Conceding that the employés of the plaintiffs and the employés of the other manufacturers have the right to strike, whatever their motive, has the defendant union the right to call a strike in the shops of other employers of labor for no other reason than because they deal with plaintiffs? I recently granted an injunction to a union of laboring men to restrain the blacklisting or boycotting of members of that union by the employers of labor for no reason other than because they were members of that union. In McCord v. Thompson-Starrett Co., 129 App. Div. 130, 113 N. Y. Supp. 385, it was held that it was contrary to public policy and illegal for an association of employers of labor to issue instructions that no men who were not members of Greater New York Carpenters' Union, or who did not at once join that union, should be set to work or retained at work. This decision was affirmed the day before yesterday in the Court of Appeals on the opinion of Mr. Justice Scott. In Jacobs v. Cohen, 183 N. Y. 207, 76 N. E. 5, 2 L. R. A. (N. S.) 292, 111 Am. St. Rep. 730, it was held that an individual employer might lawfully agree to employ only members of a particular union, but on the ground that such an agreement was not of an oppressive nature, as it did not operate generally throughout the community; but that such an agreement, when participated in generally by employers, was illegal, because it operated to impose upon workingmen who did not join the designated union the penalty of being prevented from obtaining employment at their trade and thereby gaining a livelihood. I think the same principle of law should apply in this case.

In National Protective Association v. Cumming, 170 N. Y. 315, 63 N. E. 369, 58 L. R. A. 135, 88 Am. St. Rep. 648, the plaintiff was an association of steam fitters, and the defendants were officers of rival unions. The plaintiff complained that these defendants had caused its members to be discharged by threatening the employers that, if they did not discharge the members of the plaintiff association, they (the defendants) would cause a general strike of all men of other trades employed on their buildings. The Court of Appeals, Chief Justice Parker writing the opinion, held that, since the defendant associations could strike if they chose without offering any explanation, or stating their reasons, they had a right, instead of taking that course, to inform the employers in advance of their determination and the reason for it; that the characterization of such

notification as a "threat" was immaterial, as the defendants had the absolute right to threaten to do what they had a right to do.

In Beattie v. Callanan, 82 App. Div. 7, 81 N. Y. Supp. 413, the plaintiff was a master painter against whom the defendant association had called a strike, and, later, by calling a strike of all the workmen of whatever trade, engaged upon buildings upon which the plaintiff had painting contracts, forced the principal contractors to break their contracts with the plaintiff. This the Appellate Division of the First Department, after considering National Protective Association v. Cumming, supra, held was illegal, and that the plaintiff was entitled to an injunction.

It might be argued on behalf of the defendants that the work that these other manufacturers are under contract to perform for plaintiffs is the same kind of work that was formerly performed in plaintiffs' factory by members of defendants' union; that a different question might arise if the secondary strike were directed against customers handling plaintiffs' shirt waists, or against weavers furnishing plaintiffs raw material; that the defendants are quite within their rights in making their strike effective by refusing not only to have members of their union work in the plaintiffs' factory, but also in refusing to let them make plaintiffs' shirt waists in the factories of other persons under contract with plaintiffs, and that no strike against the manufacturer (unless directed simultaneously against the entire industry) would ever be effective, as a manufacturer could have his goods manufactured by others. But the answer to this is that, when the strikers have compelled the manufacture of the goods in shops where the conditions demanded by the union prevail, then the union has in reality won its point and has reduced the other manufacturers from the position of manufacturers to that of mere jobbers, or purchasers of goods manufactured by others, and that the union has no right to order shops which have complied with union demands not to sell goods to persons against whom the union has made a demand which it seeks to enforce by such boycott.

Unions of workingmen have the sanction of law when the combination is for any legitimate purpose, such as obtaining an advance in wages, shorter hours of labor, or better laboring conditions. Were it not for these combinations of workingmen, the workingmen of to-day might still be in the quasi slavish position of the British workmen of the beginning of the last century; but our Court of Appeals, in McCord v. Thompson-Starrett Company, supra, in Curran v. Galen, 152 N. Y. 33, 46 N. E. 297, 37 L. R. A. 802, 57 Am. St. Rep. 496, and the Appellate Division of this Department in the Beattie Case, supra, have clearly laid down the distinction between acts which are legal and acts which hamper or restrict a citizen in his right to pursue a lawful trade or calling. For officers of a union not employés of a manufacturer to say to that manufacturer, who has complied with all demands of a union, "if you sell any goods to such a person we will call a strike in your factory" is an unlawful interference with the rights of the persons so boycotted. And the person so boycotted may have an injunction against any persons who, by means

of such threats, interfere with his right to buy goods where he desires. Such threat, to use the language of the court in Curran v. Galen, "militates against the spirit of our government and the nature of our institutions." Settle order in accordance with this decision.

Motion granted.