ALBRO J. NEWTON CO. v. ERICKSON et al.

(Supreme Court, Special Term, Kings County.  January 6, 1911.)

1. CONSPIRACY (§ 1*)—DEFINITION.

A conspiracy is a combination to do an illegal act by legal means, or to do any act by illegal means.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 1–5;  Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 2, pp. 1454–1461; vol. 8, p. 7613.]

2. CONSPIRACY (§ 8*)—"STRIKE."

A "strike" by laborers is merely a combination to quit work, and is not of itself illegal, nor is the announcement by the workmen of their intention to strike illegal.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 7–11;  Dec. Dig. § 8.*

For other definitions, see Words and Phrases, vol. 7, p. 6698.]

3. GOOD WILL (§ 1*)—NATURE.

The relations of a dealer to customers and to the trade generally is termed the "good will" of the business, and is property which the law protects.

[Ed. Note.—For other cases, see Good Will, Cent. Dig. § 1;  Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 4, pp. 3128–3130; vol. 8, p. 7673.]

4. INJUNCTION (§ 101*)—CONSPIRACY TO INJURE PROPERTY—BOYCOTTING.

Plaintiff is a "nonunion" manufacturer of woodwork, employing men without reference to their membership in labor unions, and defendants, the officers of a woodworkers' union, requested plaintiff to "unionize" his plant by employing union men, and on its refusal to do so defendants circulated notices among the owners, contractors, and builders of the city to the effect that the members of the union would refuse to handle material not made under "strict union conditions," and such notices contained a list of the firms working under agreement with the union, which omitted plaintiff's name, and the union called strikes, enforced by fines against its members, against the builders and contractors who used plaintiff's materials.  *Held*, that the acts of the union, through defendants, its officers, constituted an illegal attempt to injure the good will of plaintiff's business, so as to constitute a conspiracy which would be enjoined; the fact that the ordering of the strike was legal being immaterial.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 174, 175;  Dec. Dig. § 101.*]

5. CONSPIRACY (§ 8*)—ACTS CONSTITUTING—BOYCOTTS.

Boycotts are illegal.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 7–11;  Dec. Dig. § 8.*]

6. TORTS (§ 1*)—DAMAGE WITHOUT LEGAL WRONG.

Incidental injuries resulting from legal acts lawfully done are damnum absque injuria.

[Ed. Note.—For other cases, see Torts, Cent. Dig. §§ 1, 5;  Dec. Dig. § 1.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. TORTS (§ 4*)—"MALICE."
Any malice which is an ingredient in a tort consisting of an act the direct object of which is to injure another's property is malice in law; that is, the intent to injure, as distinguished from the intent to do an act which may incidentally injure.
[Ed. Note.—For other cases, see Torts, Cent. Dig. § 4; Dec. Dig. § 4.*
For other definitions, see Words and Phrases, vol. 5, pp. 4298–4304; vol. 8, pp. 7712–7713.]

8. CONSPIRACY (§ 1*)—ELEMENTS.
Any element of illegality which is essential to a combination to do an act makes the whole act illegal.
[Ed. Note.—For other cases, see Conspiracy, Dec. Dig. § 1.*]

Action by the Albro J. Newton Company against Henry Erickson and others. On motion to continue a preliminary injunction restraining defendants from injuring plaintiff's business. Motion granted.

Walter Gordon Merritt (Walter Shaw Brewster, of counsel), for the motion.

Charles Maitland Beattie, opposed.

BLACKMAR, J. The plaintiff is a manufacturer of doors, sashes, blinds, and trim. It does a business of $300,000 a year and employs about 175 men. It keeps an "open" shop, employing men without reference to their membership in labor unions. The defendants are agents and officers of certain local labor organizations, affiliated with and subordinate to the United Brotherhood of Carpenters & Joiners of America, being a union of about 185,000 workers in wood. The defendants and those whom they represent are hereinafter called the "Union." The Union has established a certain scale of wages and hours of labor for woodworkers, and in all mills engaged in business competing with plaintiff in which union labor is employed this scale of wages and hours of work perforce obtains. As the plaintiff is an "open" shop, its scale of wages is less and hours of labor more than in "union" shops. "Union" mills are therefore at a disadvantage in competition with the plaintiff; and the Union, in its attempt to maintain its scale of wages and hours of labor, necessarily feels the pressure of this competition. The Union therefore attempted to "unionize" the plaintiff's mill. Their ultimate motive was to enable them to impose on plaintiff their scale of wages and hours of service and other conditions, which in their opinion were beneficial to labor. With this end in view, the representatives of the Union called on plaintiff and requested it to "unionize" the factory, and discharge all employés who would not join the Union. This plaintiff refused to do. The Union thereupon set out to compel it to do so. The product of plaintiff's factory is sold mainly to builders in New York. The carpenters employed by said builders are largely union men. The plan of action devised and put in force by the Union was to so injure the plaintiff's trade by working upon the fears and necessity of its customers that it would be obliged to submit to the Union's demands. For this purpose, it circulated among the owners, contractors, and builders of New York a notice to the effect that the Union would refuse to handle material

unless made under "strict union conditions." The circular contained a list of the firms working under agreement with the Union, omitting the plaintiff's name. The Union then proceeded to call strikes against the builders and contractors who used the plaintiff's material, which were enforced by a system of fines on its members.

Upon a complaint showing these facts and supported, as to allegations made upon information and belief, by affidavits, the plaintiff moves for an injunction claiming that the defendants have conspired to use unlawful means, viz., threats and intimidation, to accomplish an unlawful end, viz., the injury of plaintiff's business. The defendants claim that they are using lawful means, viz., the right to decline to work except under satisfactory conditions which includes the right to announce their intention so to do, to accomplish a lawful object, viz., the improvement of the condition of labor.

Judge Vann, writing in a case having many of the elements of the present case, said:

"A conspiracy is a combination to do an illegal act by legal means, or any act by illegal means."

I adopt this definition as the basis of the inquiry in this case.

Workmen have the unlimited and unqualified right to refuse to work. A strike is a combination to quit work; and a strike can never in and of itself be illegal. It does not need to be justified. The absolute right to refuse to work, which necessarily exists in a free constitutional government constructed on individualistic principles, is guaranteed by our Constitution, and cannot be abridged by legislative, executive, or judicial power. Whatever the workmen may lawfully do, they may announce their intention of doing, and such announcement even if called a threat is not illegal. National Protective Association, etc., v. Cumming, 170 N. Y. 315, 63 N. E. 369, 58 L. R. A. 135, 88 Am. St. Rep. 648; Mills v. United States Printing Co., 99 App. Div. 605, 91 N. Y. Supp. 185. But the circular and the strikes were simply a means to an end. The Union had no quarrel with the builders, for the claim that the plaintiff's material was unsafe to handle is an afterthought, and not founded in fact. The workmen left the work on the buildings because they were required to do so by the governing power of the Union. The Union adopted this means to accomplish an end.

The means having been found to be lawful, the question is as to the legality of the end or the acts to be accomplished by the means. The end was to prevent the builders and contractors buying the plaintiff's material and so render plaintiff submissive to the will of the Union. This is what the defendants have combined to do. The plaintiff has a right to carry on business as absolute as the right of the workmen to control their own time and labor. This right is a property right. The relations of a dealer to his customers and to the trade generally is called good will, and is property which the law is bound to protect. There is no branch of the law better settled than the jurisdiction of equity to protect the good will of a business against trespass and invasion by its writ of injunction. This property is of a peculiar intangible nature; but it is the subject of bargain and sale, it may be

capitalized as the basis of a corporate stock issue, and it is often the most important asset possessed by a manufacturer or merchant. To bring an "obstinate" manufacturer to terms, an attack on his good will would be fully as effective as to tear down his factory or to smash his machinery. It seems to me that a combination to attack the plaintiff's good will is illegal; and the illegality is not changed by the innocence of the means used. As was said by Justice Holmes in Aiken v. Wisconsin, 195 U. S. 194, 25 Sup. Ct. 3, 49 L. Ed. 154:

> "When the acts consist of making a combination calculated to cause temporal damage, the power to punish such acts, when done maliciously, cannot be denied because they are to be followed and worked out by conduct which might have been lawful if not preceded by the acts."

Every wrongful deed could be resolved into component acts which would be lawful if directed to an innocent end. The moral and legal character of acts depends on the end sought and the accompanying motive and intent. This principle underlies the whole fabric of our criminal law. An act by a single person may be lawful and innocuous. The same act done concurrently by a large number may produce injury to others. A combination for the express purpose of inflicting that injury is made unlawful because of its purpose and object. It is not a combination to do the acts; it is a combination to effect the result of the combined acts. If this results in injury to others, the combination to effect it is unlawful. The defendant's counsel claims that the strikes were in and of themselves lawful. To that I assent. He claims that the strikers had the right to send notice of their intention to strike and to give the reason therefor. To that also I assent. But these acts alone do not constitute plaintiff's cause of action. His cause of action is the combination to injure his business. This case is nearly akin to the boycott cases. It is an attempt on the part of the Union to compel builders and contractors to boycott the plaintiff. An examination of a large number of cases shows that the courts have uniformly pronounced the illegality of the boycott. I cite as illustrations Purvis v. United Brotherhood, 214 Pa. 348, 63 Atl. 585, 12 L. R. A. (N. S.) 642, 112 Am. St. Rep. 757; Wilson v. Hey, 232 Ill. 389, 83 N. E. 928, 122 Am. St. Rep. 119, 16 L. R. A. (N. S.) 85; Doremus v. Hennessy, 176 Ill. 608, 52 N. E. 924, 54 N. E. 524, 43 L. R. A. 797, 68 Am. St. Rep. 203; Purington v. Hinchliff, 219 Ill. 159, 76 N. E. 47, 2 L. R. A. (N. S.) 824, 109 Am. St. Rep. 322; Vegelahn v. Guntner, 167 Mass. 92, 44 N. E. 1077, 35 L. R. A. 722, 57 Am. St. Rep. 443; Pickett v. Walsh, 192 Mass. 572, 78 N. E. 753, 6 L. R. A. (N. S.) 1067, 116 Am. St. Rep. 272; Lohse Patent Door Co. v. Fuelle, 215 Mo. 421, 114 S. W. 997, 128 Am. St. Rep. 499, 22 L. R. A. (N. S.) 607; Iron Molders' Union v. Chalmers Co., 166 Fed. 45, 91 C. C. A. 631, 20 L. R. A. (N. S.) 315; Loewe v. Lawler, 208 U. S. 274, 28 Sup. Ct. 301, 52 L. Ed. 488; Aikens v. Wisconsin, 195 U. S. 194, 25 Sup. Ct. 3, 49 L. Ed. 154; Beattie v. Callanan, 82 App. Div. 7, 81 N. Y. Supp. 413; Gray v. Builders' Trades, etc., 91 Minn. 171, 97 N. W. 663, 63 L. R. A. 753, 103 Am. St. Rep. 477; Schlang v. Ladies' Waist Makers Ass'n, 67 Misc. Rep. 221, 124 N. Y. Supp. 289. These cases with others show that our system of jurisprudence, as developed

by judicial decisions made by independent tribunals in different jurisdictions, leads to the conclusion that a concerted attack upon the trade of a merchant or manufacturer by inducing or coercing his customers to cease dealing with him is illegal. I have found no case directly to the contrary. It seems to me that any other decision would be equivalent to excluding this class of property from the protection of the law. The law would then proclaim to the combatants engaged in the struggle over the division of the products of manufacture between capital and labor: "You must not use violence toward persons or tangible property, but you may cripple your adversary by destroying his good will and business connections."

An exact accord has not been reached as yet by the courts in different jurisdictions; but to this extent I think they all go. I think the complaint alleges, and the evidence establishes, a conspiracy on the part of the defendants in a combination to do an illegal act, viz., injure the business of the plaintiff by lawful means, viz., strikes and notices of intention to strike. I have not referred to section 580 of the penal law, although a strong argument could be made to show that the acts of the defendants are obnoxious to the provisions of that section.

The argument of the defendants is that the combination was to accomplish a lawful end, viz., the benefit of its members, by lawful means, viz., peaceful strikes. This argument omits entirely the element of the willful injury to plaintiff's business. The fact that indirectly the Union is aided in the struggle for a better rate of wages and shorter hours of service does not justify the injury to plaintiff. The injury to plaintiff is an essential element in the defendants' scheme, and whether the benefit to defendants' members be considered as the end of the combination and the injury to the plaintiff one of the means used, or whether the injury to the plaintiff be considered the end and the strikes the means, the result is the same. The concerted action is an illegal conspiracy.

I cannot think that either Roseneau v. Empire Circuit Company, 131 App. Div. 429, 115 N. Y. Supp. 511, or Park & Sons Company v. National Druggist Ass'n, 175 N. Y. 1, 67 N. E. 136, 62 L. R. A. 632, 96 Am. St. Rep. 578, militates against this conclusion. In both cases the injury was incidental to a lawful act by lawful means. In this case the injury to the plaintiff was the very result aimed at by the combination. Incidental injury to others may often happen as the result of legal acts lawfully done. This is damnum absque injuria. But, where the aim and object of the act is injury to another, this is a violation of his rights. If malice is an ingredient of such a tort, it is malice in law, which is the intent to injure as distinguished from the intent to do an act which may incidentally injure. The state of the law and the position of the courts should be made perfectly clear on these points. The usefulness and value of labor organizations is fully recognized. Their efforts to better the condition of labor have been remarkably effective, beneficial to labor, and of great value to society and the state. They may use any lawful means to accomplish these ends. Capital and labor unite in production, and between them must be divided the fruits of their joint efforts. Each is desirous of increasing its own share, and this is necessarily at the expense of the other.

From this results an economic warfare. The forces are marshaled against each other—capital in corporations managed by directors and labor in Unions managed by councils. This struggle often creates waste and imposes hardships on the rest of the people; but such things society endures as the price of individualism. Fortunately the warfare is subject to municipal law, and society is strong enough to impose its terms on the combatants. Certain methods and weapons the law permits. Others it prohibits. It permits the strike on the one side and the lockout on the other. But each combatant must respect the rights of the other guaranteed by our Constitution. Among these are life, liberty, and property. Violence against persons and tangible property will not be permitted. Neither will attacks on intangible property rights, like business, good will, or trade, be permitted. One cardinal principle must be borne in mind, that any element of illegality essential to a scheme or combination makes the whole illegal. This principle the defendants have overlooked. They have found a lawful means, viz., strikes, and an ultimate lawful end, viz., the improvement of labor; but they have forgotten that the very turning point in their scheme, and which alone makes it effective, is the coercion of plaintiff by injuring property rights. This is exactly what the defendants intended, it is what they have done, and it is unlawful.

An order may be entered enjoining the defendants, their attorneys, agents, servants, associates, confederates, and all persons acting in aid' of or in connection with them, or any of them, from conspiring, combining, or acting in concert in any manner to injure or interfere with plaintiff's good will, trade, or business, for the purpose of coercing it to employ union labor, either, first, by sending to any customer or prospective customer of plaintiff any letter, circular, or communication printed, written or oral, which in terms or by inference suggests that labor troubles will follow the use of materials purchased from plaintiff or from any person, firm, or corporation declared "unfair," or whose material does not bear the union label, meaning plaintiff thereby; or, second, by ordering, directing, requiring, or by compelling by any by-law, rule, or regulation, or any act thereunder, any person whatever to refrain from or cease working for any person, firm, or corporation because they use material purchased of or furnished by plaintiff or by any person, firm, or corporation declared "unfair," or whose material does not bear the union label, meaning plaintiff thereby. But nothing herein contained is to be construed to prevent peaceable strikes except those directed against customers or prospective customers of plaintiff for the purpose of injuring or interfering with plaintiff's good will, trade, or business.