(77 Misc. Rep. 592.)

BOSSERT et al. v. UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA et al.

(Supreme Court, Special Term, Kings County.   September 25, 1912.)

1. INJUNCTION (§ 223*)—VIOLATION—ACTS CONSTITUTING.
An injunction restraining the representatives of a carpenters' union from conspiring to interfere with the good will and business of a firm employing nonunion men, and to coerce the firm into employing union labor, is not violated by a representative of the union informing union employés engaged in the construction of a building for a third person that they are handling nonunion material, but leaving to the men the voluntary determination to remain at work or leave as they see fit.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 448–473; Dec. Dig. § 223.*]

2. TRADE UNIONS (§§ 1, 4*)—RIGHT TO FORM UNIONS.
Laborers may form a union and agree that they will not work with nonunion material, and it is not illegal to expel a member for his refusal to abide by the rules of the union; and it is only when a labor organization seeks to injure a nonunion manufacturer that the law is violated.

[Ed. Note.—For other cases, see Trade Unions, Cent. Dig. §§ 1, 3; Dec. Dig. §§ 1, 4.*]

3. INJUNCTION (§ 223*)—VIOLATION—ACTS CONSTITUTING.
An injunction restraining representatives of a labor union from interfering with the business of a firm employing nonunion labor, to coerce the firm into employing union labor, is not violated by a representative of the union informing the union men employed by a third person that they are working on nonunion material, and that by continuing to work on such material they violate the rules of the union, for which they will be fined, since such act does not amount to force, threats, or intimidation, though the men quit work on such material, provided the act is done for the purpose of advancing the interests of the union and its members, and not for the purpose of interfering with the good will and business of the firm.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 448–473; Dec. Dig. § 223.*]

4. TRADE UNIONS (§ 1*)—STATUS—RIGHTS OF LABORERS.
Where the object of a labor union or the purpose of its action under its rules is principally the malicious injury of another or his property, the agreement forming the union is a common-law conspiracy; but where the purpose is only to advance the interests of the members of the union, the union is not illegal, and its rules may legally be enforced, provided the members are left free to leave the union and work as they please.

[Ed. Note.—For other cases, see Trade Unions, Cent. Dig. § 1; Dec. Dig. § 1.*]

Action by Louis Bossert and another against the United Brotherhood of Carpenters and Joiners of America and John Rice.   On motion to punish defendant John Rice for contempt for violating an injunction.   Denied.

Walter Gordon Merritt, of New York City, for plaintiffs.

Charles Maitland Beattie and William P. Maloney, both of New York City, for defendant.

CRANE, J.   The firm of Goldberg & Smith were constructing under contract with the owners a building at the junction of Monroe and

Grand streets, in the borough of Manhattan. Louis Bossert & Son were furnishing, under contract with Goldberg & Smith, all the woodwork for said building, such as doors, sashes, window frames, and trim. John Rice was the agent and organizer of the United Brotherhood of Carpenters and Joiners of America, a labor union consisting of about 200,000 members, of whom about 40,000 worked in union mills and the others on buildings installing trim. Said Rice is now an agent and officer of this Brotherhood, which has a joint district council in New York and vicinity. It is a rule of the Brotherhood or union that the members who work on buildings will only work on the trim made by their own members in union mills. If members violate this rule or mutual agreement, they are subject to a fine of $10.

The carpenter mill of Louis Bossert & Son did not employ union men or members of the Brotherhood of Carpenters. Consequently the members of the Brotherhood engaged to work upon the building heretofore mentioned refused to work upon learning that the trim and woodwork to be furnished them was nonunion work. An injunction has been obtained in an action brought by Louis Bossert & Son against John Rice and others, representing the Brotherhood of Carpenters, enjoining each and all of them—

"from conspiring, combining, or acting in concert in any manner to injure or interfere with the good will, trade, or business of the plaintiff's copartnership, for the purpose of coercing plaintiffs to employ union labor either, first, by sending to any customer or prospective customer of the plaintiffs any letter, circular or communication, printed, written, or oral, which in terms or by inference suggests that labor trouble will follow the use of materials purchased from plaintiffs, or from any person, firm, or corporation declared unfair, or whose material does not bear the union label, meaning plaintiffs thereby; or second, by ordering, directing, requiring, or by compelling by any by-law, rule, or regulation, or any act thereunder, any person whatever to refrain from or cease working for any person, firm, or corporation because they used material purchased of or furnished by plaintiffs, or by any person, firm, or corporation declared unfair, or whose materials [sic] does not bear the union label, meaning plaintiff thereby. But nothing herein contained is to be construed to prevent peaceable strikes, except those · directed against customers or prospective customers of the plaintiffs, for the purpose of interfering with the good will, trade, or business of the plaintiff's copartnership."

Subsequently to the obtaining and service of this injunction the defendant John Rice went to the building in question and spoke to members of his Brotherhood at work on the nonunion trim, who thereupon ceased work. This motion is made to punish the said John Rice for contempt in having violated the injunction and illegally interfered with the plaintiff's business.

[1] If these carpenters to whom Rice spoke voluntarily left their work, without any compulsion from Rice or his organization, there was nothing wrongful in his acts. The courts cannot compel men to work, and they can leave for any reason they see fit, or without reason; and if it be that the carpenters in this case desired to comply with the rules and regulations of their Brotherhood, there is no law that can prevent them, or could prevent Rice from informing them that the trim was nonunion material. The injunction quoted from does not restrain such deeds, as the act prohibited must be under some compelling or directing by-law, rule, or regulation of the union. This

could not include the giving of information to workmen as to the nature of the material they were at work upon, leaving to them the voluntary determination to stay or leave, as they saw fit. No injunction could keep them at work; therefore their reason for leaving is immaterial as long as it is voluntary.

What John Rice said to those men when they threw down their tools and left is not stated in the moving papers, and it is left to hearsay statements to be inferred that he told them they would be fined, while answering affidavits of the men themselves state that they left the work voluntarily, under no threats, as soon as they knew the material was nonunion. The defendant Rice swears that he made no threats. Under these circumstances, I would find as a matter of fact that the injunction order had not been violated by the defendants proceeded against. But, assuming that the contention of the plaintiffs is correct, and that John Rice did tell his men that the material upon which they were working was nonunion material, that they had agreed upon entering the Brotherhood not to work upon nonunion material, and that they would have to comply with this rule of the union or be fined or expelled, would this be a violation of the injunction order?

[2, 3] The last clause above quoted from the injunction states that nothing therein contained shall prevent peaceable strikes, except those directed against customers of the plaintiff *for the purpose of interfering with the good will of the plaintiff's copartnership.* The whole question turns, as it does in all these cases, upon the purpose for which the act is done. If it be for the purpose of injuring the plaintiff's business or its good will, it is illegal and within the terms of the injunction; if it be done for the purpose of legitimately advancing the interests of the Brotherhood, and of procuring employment for their fellow members who work in mills, or of procuring a market for such work by refusing to handle trim not made in such mills, I can see nothing illegal in it, and the purpose is not within the terms of the injunction order.

It is certainly legal for a body of men to agree among themselves that they will not work under certain conditions or upon certain kinds of material. As men can not be compelled to work at all, they may place any conditions they please upon their employment. They can, for instance, agree among themselves that they will not work upon carpenter trim which has not been made by their fellow members. This is a lawful means by which they place in competition in the markets the labor of their fellow mill workers or the product of such a mill. When at work upon a building in which carpenter trim is to be used, these men, in carrying out their purpose and agreement, may quit work or refuse to work because the trim has not been made by men of their Brotherhood. Unless by force, threats, or intimidation they are compelled to leave the work, there can be nothing illegal in calling their attention to the fact that the trim they are handling has not been made by their fellow members, and that to continue working upon it would be in violation of their mutual agreements. It would not amount to force, compulsion, or intimidation to state to these men that they were perfectly free to continue at work upon this nonunion

material if they desired, but that by so doing they could not expect to continue in the Brotherhood with their fellow members and receive its benefits, and would therefore be expelled. See the opinion of Holmes, J., in Vegelahn v. Gunther, 167 Mass. 92, at page 107, 44 N. E. 1077, at page 1081 (35 L. R. A. 722, 57 Am. St. Rep. 443), as to the meaning of "threat" and "compulsion"; also People v. McFarlin, 43 Misc. Rep. 591, 89 N. Y. Supp. 527.

If it be legal to form such a union, with such a purpose and such agreements, it certainly could not be illegal to expel a member because he refused to abide by the rules and agreements of the union. Such is the basic principle of every religious, political, and social organization. Men cannot be compelled to join them, neither can the association be compelled to keep them after they refuse to abide by its reasonable rules and regulations. If these carpenters in question have legally agreed with their 200,000 fellow members that they will advance the interests of the 40,000 working in mills or others who desire to work in mills by refusing to handle trim not made by such men, I fail to see anything contrary to law in giving force and effect to this agreement by informing members that the material they are about to handle has not been made in mills employing their fellow associates, that the rules of their order prohibit their handling it, and that if they do they will be expelled from the order or fined in accordance with its rules. So long as these men are left free to work upon the nonunion material if they so desire, and no force, threats, or intimidation are used to compel them to leave, it certainly cannot be considered compulsion or intimidation, within the terms of the law, that they are reminded that they will be expelled or fined in accordance with their agreement.

To enjoin such acts would be to destroy by law that which the law has declared legal and in fact beneficial to society. To say that men may organize and refuse to work under certain conditions or upon a certain class of material, and then compel the organization to keep in membership those who refuse to abide by its purpose, is to destroy the organization. If there be the power of expulsion, there must of necessity be the lesser power to fine according to rules, provided the person desires to retain membership in the organization.

[4] It is a question of fact, and not a question of law, which is the basis of all cases of this nature. If the purpose be to honestly and fairly advance the interests of the workingmen, it cannot be illegal to enforce the rules and obligations of the union, provided the member is left free to get out and work as he pleases. If, however, the object of the order of the purpose of its actions under any rule or regulation be simply or principally the malicious injury of another or his property, then the agreement is but a common-law conspiracy. The question in all these cases is, as I say, a question of fact, which is the purpose aimed at.

The acts which I have assumed above to be legal are clearly distinguishable from all those acts which partake of the nature of the boycott. If the members of the union aimed directly at destroying Bossert's business, it would be illegal, and by refusing to work on

his material, while they were perfectly willing to work on other nonunion material of like nature, would be strong evidence of a purpose to directly injure his business, and not to advance the interests of the union. If they sought to procure men of other trades to quit work for the owner of the building where Bossert's material was being used, or sought to procure the customers of the owner to refuse to deal with him so long as he used Bossert's material, this would all be of the nature of a boycott; but there is nothing in the nature of a boycott, so far as I have been able to find, in the refusal of men to work upon or handle material not made by members of their own union.

It will be noted that these striking men in no way interfered with the business of the owner or contractor using Bossert's material. They did not prevent him from employing other carpenters not members of their union. They did not even try to persuade him not to employ such. Neither did they attempt to persuade or prevent other tradesmen from working for such owner or builder, or in any manner injure his business. They merely refused to work for him; that is all. In these particulars the case differs from all the boycott cases.

Much emphasis has been laid by counsel for the plaintiff upon the recent case of Newton v. Erickson, 70 Misc. Rep. 291, 126 N. Y. Supp. 949, affirmed by the Appellate Division without opinion in 144 App. Div. 939, 129 N. Y. Supp. 1111. It was distinctly found as a matter of fact, not as a matter of law, that injury to the plaintiff was the very result aimed at by the combination. There has never been any dispute about the law that a combination for the very purpose of injuring another was illegal. The facts vary with each case, and where a legitimate purpose, and not a direct injury to another, is apparent, there is nothing illegal in the combination. As I have said, the question is always one of fact. In most of the cases cited by the learned judge in his opinion the law was based upon a finding of fact that the purpose was a direct injury to the party seeking relief, or, as said in Ertz v. Produce Exchange, 79 Minn. 140, 81 N. W. 737, 48 L. R. A. 90, 79 Am. St. Rep. 433:

"The interference was not to further any legitimate interest of workmen, but done maliciously to injure another."

And again:

"Any number of men jointly, having no legitimate interest to protect, may not lawfully ruin the business of another," etc.

In Lohse Patent Door Co. v. Fuelle, 215 Mo. 421, 114 S. W. 997, 22 L. R. A. (N. S.) 607, 128 Am. St. Rep. 492, such a fact was specifically admitted, as the case arose on a demurrer to a complaint stating such direct injury to be intended.

The distinction between the Newton Case and the facts as presented by this case is that the very result aimed at here is, not to injure Bossert & Son, but to advance legitimate interests of the menbers of the Brotherhood. I believe that such acts as the plaintiff here claims the defendant John Rice and the Brotherhood of Car-

penters to be guilty of have been recognized by the authorities of this state as being legal, in that the purpose was apparently not to injure another, but to advance legitimate interests of their own. Such an authority is National Protective Association v. Cumming, 170 N. Y. 315, 63 N. E. 369, 58 L. R. A. 135, 88 Am. St. Rep. 648. It was there held that a labor union may refuse to permit its members to work with fellow servants who are members of a rival organization, and may notify the employer to that effect, and that a strike will be ordered unless such servants are discharged, when its action is based upon a purpose to secure an exclusive preference of employment to its own members.

"It is only," says Judge Parker, "where the sole purpose is to do injury to another, or the act is prompted by malice, that it is insisted that the act becomes illegal."

In that case we have competition of labor. McQueed, the steamfitter objected to, had his labor to sell. The members of the National Protective Association had their labor to sell. They refused to work where McQueed's labor was hired, and this purpose and the resulting strike were declared legal and in accordance with fair competition. I take it that material is entitled to no more protection than labor; that before the law labor and material are both property, entitled to equal rights. In this present case carpenter trim which Bossert & Son have for sale is no more sacred than the labor and skill which McQueed had for sale in the above case. The Brotherhood of Carpenters say in this case:

"Forty thousand of our members are in mills making carpenter trim, which is in the market competing with Bossert's trim. In order to help these fellow members of ours keep their employment by marketing their product, as well as in procuring like labor for others in the mills, we refuse to work with or upon material not made by our men."

Where is the distinction to be drawn in principle between this case and the Cumming Case? One is the competition of labor, and the other is the competition of manufacture. If the actions in one case are legal, so must be those in the other.

It may be claimed that it is very difficult to distinguish between a purpose to advance the interests of the members of an organization and the purpose to directly injure another man's business; but the distinction exists, in spite of the difficulty, and has been repeatedly stated in such words as are found in Mills v. U. S. Printing Co., 99 App. Div. 605, at page 613, 91 N. Y. Supp. 185, at page 190:

"There is a manifest discrimination between a combination of workmen to secure the exclusive employment of its members by a refusal to work with none other, and a combination whose primary object is to procure the discharge of an outsider and his deprivation of all employment. The difference is between a combination for the welfare of self and that for the persecution of another."

That men may combine and refuse to work with others who are not members of their union finds support in Pickett v. Walsh, 192 Mass. 572, 78 N. E. 753, 6 L. R. A. (N. S.) 1067, 116 Am. St. Rep. 272, 7 Ann. Cas. 638, and Gray v. Building Trades Council, 91 Minn. 171, 97 N. W. 663, 63 L. R. A. 753, 103 Am. St. Rep. 477, 1 Ann.

·Cas. 172. If it be legal to refuse to work with nonunion men, and strikes may be called to oust them, so likewise may men refuse to work with nonunion material. Labor is as much property as wood-work, and the law which will not protect the one in this particular ·cannot protect the other. It is only when the labor organization goes beyond this mere refusal to work upon nonunion material .and by other acts seeks to injure a nonunion manufacturer that the law is transgressed. This rule has found expression in Toledo A. A. & M. M. Ry. v. Pennsylvania Co. et al. (C. C.) 54 Fed. 730, 19 L. R. A. 387, as follows:

"Ordinarily, when such a combination of persons does not use violence, .actual or threatened, to accomplish their purpose, it is difficult to point out with clearness the illegal means or end which makes the combination an un-lawful conspiracy; for it is generally lawful for the combiners to withdraw their intercourse and its benefits from any person, and to announce their in-tention of doing so, and it is equally lawful for the others, of their own mo-tion, to do that which the combiners seek to compel them to do. Such com-binations are said to be unlawful conspiracies, though the acts in themselves .and considered singly are innocent, when the acts are done with malice; i. e., with the intention to injure another without lawful excuse."

Assuming, therefore, that the plaintiff's contention be correct, and that John Rice went to the carpenters at work on the Grand street building, members of his Brotherhood, and told them that the trim was nonunion work, that to continue to handle it would be against the rules of the union, for which they would be fined, and that thereupon the men quit work, yet this was not a violation of the injunction, as it was a peaceable strike for the purpose of ad-vancing the interest of the Brotherhood and its members, and not for the purpose of interfering with the good will of the plaintiff's ·copartnership.

Motion to punish for contempt denied, with costs.