the same and continued to use it. Plaintiff denied that the glass had faded, and offered testimony tending to show that it conformed to the sample submitted to defendant's representative. This issue of fact was determined by the trial judge in favor of the defendant. Plaintiff appellant contends, however, that the glass man was not the agent of plaintiff, but that it was well understood that plaintiff was merely ordering the glass through him at the request of the defendant.

The evidence, on the whole, would indicate that, though an independent dealer in glass and not in the general employ of the plaintiff the glass man was the agent of the plaintiff for the purposes of that particular transaction, and that the sample upon which the defendant purchased the glass in question must be ·deemed the sample of the plaintiff. Had the defendant, therefore, proven by competent evidence both ,the breach of warranty and the extent of the damage resulting to it from such breach, the defendant would have been entitled to have the amount of its damage deducted from the amount of plaintiff's claim; but the defendant introduced no competent proof of damage, merely insisting that the glass was of no value to it for the purpose for which it was bought. While, if there was a breach of warranty, the defendant would have been entitled to recover the purchase price, had it rescinded the contract and tendered back the glass to plaintiff, the purchase price is not the proper measure of damage where the article sold was and still is retained by the purchaser. The proper measure of damage in the latter event is the difference between the value of the article sold as represented and the value of the article actually delivered to and retained by the defendant. In the entire absence of proof on this point, it was error for the trial judge to direct judgment in favor of the defendant. .

The judgment must therefore be reversed as against the evidence, and a new trial ordered, with costs to the appellant to abide the event All concur.

---

BOSSERT et al. v. DHUY et al.

(Supreme Court, Appellate Division, Second Department. November 27, 1914.)

1. ASSOCIATIONS (§ 20*)—SUITS AGAINST.
　　There is no such legal entity as an unincorporated association, and every member of such an association may be sued, although, if the members are numerous, some officers or members may, under Code Civ. Proc. § 1919, be made parties defendant as representatives of all.
　　[Ed. Note.—For other cases, see Associations, Cent. Dig. §§ 36–43; Dec. Dig. § 20.*]

2. ACTION (§ 12*)—ILLEGAL AGREEMENT—DEFENSES.
　　That plaintiff was a member of an anti-boycott association, by which its counsel was employed in violation of Penal Law (Consol. Laws, c. 40) § 280, restricting the right to practice law, cannot be raised as a defense to the action.
　　[Ed. Note.—For other cases, see Action, Dec. Dig. § 12.*]

3. INJUNCTION (§ 101*)—BOYCOTTS.
　　Where organized carpenters, as one step in the conflict between organized labor and nonunion mills, singled out one nonunion mill and di-

rected their members to refuse to work wherever its products were used, and numerous strikes resulted, the carpenters will be enjoined, for, though there was no personal animus against the single mill, their action constituted an affirmative wrong and cannot be upheld as the withholding by the members of the association of their labor.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 174, 175; Dec. Dig. § 101.*]

Appeal from Special Term, Kings County.

Action by Louis Bossert and John Bossert, copartners doing business as Louis Bossert & Son, against Frederick Dhuy and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

See, also, 151 N. Y. S. 881.

The opinion of Putnam, J., at Special Term, is as follows:

Plaintiffs are Brooklyn nonunion millowners, engaged in manufacture of doors, sash, and inside trim used in the building trade. Their suit is against certain representatives of the Joint District Council of the United Brotherhood of Carpenters and Joiners of America, and other defendants, to restrain them from refusing to work upon plaintiffs' material, and from calling strikes against it. Plaintiffs employ over 500 woodworkers in manufacturing doors and trim. This mill production is sold as general merchandise, as the plaintiffs' firm does not itself install the manufactured material in buildings. Part of plaintiffs' trim, especially doors, is purchased from other factories, chiefly from nonunion shops in other states.

The organized carpenters have long felt the competition of machine woodworkers. As the factory produces more of the interior fittings of buildings, the field of carpenter labor has been narrowed, so that in 1894 the carpenters sought a jurisdictional agreement with the machine woodworkers, which was afterwards abrogated, and in 1903 the difficulties led to an arbitration between these bodies. Hollander & Barnett, Studies in American Trade Unionism, p. 311 (1906). The conflict in Manhattan has had many setbacks, and even a disastrous lockout by the building trades in 1906, but with the present result that in Manhattan, and partially in the Bronx, the building trades have become strongly unionized, so that the organized carpenters are able to enforce upon the Manhattan and Bronx builders an exclusion of nonunion trim from the larger and more important new construction.

The working agreement between the manufacturing woodworkers' association and the United Brotherhood of Carpenters and Joiners of America, covering the term of three years from January 1, 1910, provides that the woodworkers confine themselves to manufacturing trim, but that they shall not install or erect material; and the carpenters agree not to erect any trim (with exception of sash 1⅜ inches thick and under) which has been made in nonunion factories. Carrying out this plan, unions of manufacturing woodworkers were formed, and only such union members are to be employed in the mills of the manufacturing woodworkers' association.

However, in the borough of Brooklyn the larger shops were mostly nonunion. To extend the influence of the union the carpenters sought in 1910 to enforce an exclusion of nonunion trim in building operations in this borough. This was voted at the convention of the United Brotherhood of Carpenters held in September, 1910, where a campaign of organization was directed against some large so-called unfair mills in Brooklyn. Except in some municipal jobs, the nonunion mills had encountered no strikes against the use of their materials, which they had been furnishing to builders and contractors. However, in the fall of 1910, the secretary of the Brooklyn Builders' Association was informed by the labor organizers of the claim that the further use of nonunion trim would lead to trouble, followed by warnings that these trim mills were going to be unionized. Eventually, on or about September 15, 1910, four strikes were called in one day against building operations where the trim of the Albro J. Newton Company was used. It

was announced that the purpose was to organize these industries, mentioning several large nonunion concerns, which were to be taken up one at a time, beginning with the Newton Company. All of these Newton strikes were eventually arranged by the builders agreeing not to use any more nonunion material. The Newton Company sought relief by injunction proceedings, in which the Special Term held that plaintiff was entitled to restrain defendants from thus conspiring to attack the plaintiff's good will. Newton Co. v. Erickson, 70 Misc. Rep. 291, 126 N. Y. Supp. 949, affirmed without opinion 144 App. Div. 939, 129 N. Y. Supp. 1111. Subsequently in the Newton Case a final decree was rendered making permanent that injunction.

About October, 1911, strikes essentially similar to those against the Newton Company occurred against the trim of L. Bossert & Son, the present plaintiffs. Work stopped on four Brooklyn building operations using plaintiffs' trim. One was on October 2d, which was followed by the other three strikes, in which the men left on the following Saturday, October 9th. In these cases the trim had been openly delivered from plaintiff's wagons, bearing his name, and receipt tickets with like imprint had been signed by the union foremen on the different jobs. Defendants for the time concentrated their opposition upon the material from a single mill, since a general strike against all nonunion material would be too costly for the labor organization. The labor representatives, however, did not hesitate to say that they proposed to take care of the other concerns afterwards. The plaintiffs applied for a preliminary injunction to restrain the defendants, which, following the Newton decision, was granted by the Special Term on October 20, 1911.

Subsequently the question of compliance with this temporary injunction was raised upon affidavits which charged John Rice, one of defendants' organizers with calling off the union men from working on plaintiffs' material, as it was being erected by Goldberg & Smith, who were contractors upon a building in Manhattan. That motion failed, as it was found as a fact that the purpose of stopping work was not to injure or interfere with plaintiffs' good will, but was in the exercise of lawful rights of the union men to refuse to sell their labor. Bossert v. United Brotherhood of Carpenters, 77 Misc. Rep. 592, 137 N. Y. Supp. 321.

[1] Upon this hearing the defendants objected to the joinder as defendants of the representatives of the Joint District Council of the United Brotherhood of Carpenters, the executive board of the United Brotherhood of Carpenters and Joiners of America, and the Amalgamated Society of Carpenters and Joiners of America. It was urged that an injunction suit does not lie against such unincorporated bodies. There is no such legal entity as an unincorporated association. Every member of such association may be sued, and, if the numbers are numerous, some officers, or members may be made parties defendant as representatives of a class. Code Civ. Proc. § 1919. Heaton v. Hull, 28 Misc. Rep. 97, 59 N. Y. Supp. 281; Id., 51 App. Div. 126, 64 N. Y. Supp. 279; People ex rel. Stearns v. Marr, as President of Iron Moulders' Union, 181 N. Y. 463, 74 N. E. 431, 106 Am. St. Rep. 562, 3 Ann. Cas. 25; Russell & Sons v. Stampers Union, 57 Misc. Rep. 96, 107 N. Y. Supp. 303.

[2] Upon the opening of the trial it was further urged that because plaintiff was a member of the American Anti-Boycott Association, and had the assistance of Mr. Merritt as counsel of that association, it was violating Penal Code, art. 280, and that therefore this court should decline to entertain this suit. Even if the association of manufacturers by which the payment of dues entitling members to obtain legal assistance were within this penal statute, it does not follow that this action fails. Such arrangements between a plaintiff and its attorneys cannot be availed of by defendants in the suit. Boone v. Chiles, 10 Pet. 177, 9 L. Ed. 388; Motion Picture Co. v. Ullman (C. C.) 186 Fed. 174.

[3] The full and elaborate proofs in this hearing raise squarely the right of the organized body of carpenters to single out one nonunion mill and direct their members to refuse to work on material which it produces, as a step in the conflict which the labor organization is conducting against nonunion mills in this borough. The testimony has shown that in Manhattan the struggle has resulted in favor of the exclusive use of trim produced under union conditions, and that this situation is now accepted by large builders of Man-

hattan, and certain mutual advantages therefrom to builders as well as workmen appear to be acknowledged.

There is no evidence of any grudge or personal malice against the plaintiffs, whose material was singled out for attack for reasons of convenience, in pursuance of a plan to refuse to handle nonunion material by means of successive strikes against individual manufacturers, so as eventually to bring it about that only the factory-made trim produced under union conditions shall be handled by the carpenters. Defendants do not circulate unfair lists or make threats to boycott opposition plants. They do, however, circulate lists of union mills in New York and vicinity, with a statement that the labor union will refuse to handle shop-made carpenter work unless constructed under union conditions, with a list of manufacturing firms who are stated to be working under an agreement with the Joint District Council.

The question here is in narrow compass. Can the Joint District Council—exercising the right of its members to labor or to withhold their labor—discriminate against the plaintiffs' mill, and refuse to handle the plaintiffs'. material, as distinguished from other nonunion trim? The strike committee having decided that plaintiffs' shop carpenter work is obnoxious to its organization, and having a right to refuse to work with or without giving any reason, here maintains that it may strike against the material made by plaintiffs, but for the time suffer their nonunion rivals to continue their production, at least until after plaintiffs' mill shall be reduced to submission. Thereby the labor organization may be said to act affirmatively and aggressively, as the damage to the good will and business of the plaintiffs is the specific object aimed at, the direct result sought. Granted that the selection of the plaintiffs was made with no personal hostility, and was an act to effect ultimately the whole body of nonunion millowners, the destructive result to plaintiffs is not mitigated. The refusals to work on plaintiffs' trim so nearly simultaneous, in October, 1911, were in the eye of the law affirmative and aggressive, and not merely negative.

It is, however, forcibly urged that so long as the public peace is kept, and unless a strike or lockout be malicious in fact, courts should not interfere in such an economic conflict. This, however, is for a higher court, or for the Legislature. In October, 1911, when these strikes occurred, the law of this precise situation and the rights of the open shop producer in this judicial district had been settled and determined by the Newton Case, which, until overruled, controls this Special Term.

The plaintiffs under that authority are therefore entitled to have the temporary injunction continued by final judgment, with costs.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

Charles Maitland Beattie and William P. Maloney, both of New York City, for appellants.

Walter Gordon Merritt, of New York City (Walter Shaw Brewster, of New York City, of counsel), for respondents.

PER CURIAM. Judgment affirmed, without costs, upon the opinion of Mr. Justice Putnam, at Special Term. See, also, Newton Co. v. Erickson, 70 Misc. Rep. 291, 126 N. Y. Supp. 949, affirmed 144 App. Div. 939, 129 N. Y. Supp. 1111.